STEPHEN S. HART
HART LAW OFFICES, P.C.
482 Constitution Way Suite 313
Idaho Falls, ID 83402-3537
Phone: (208) 524-3272
Fax: (208-524-3619
Idaho State Bar # 1987
Email: shart@hartlawif.com

Attorney for Defendant, Tel James Boam

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TEL JAMES BOAM,<br><br>. Defendant | Case No. 4:20-cr-00188-BLW-1<br><br>**MOTION TO VACATE OR SET ASIDE JUDGMENT**<br><br>28 U.S.C. § 2255 |

Defendant Tel James Boam, through his undersigned counsel of record, Stephen S.

Hart, hereby moves the Court to vacate or set aside his judgment and sentence.

## MOTION

1.  <u>Name and Location of Court Which Entered the Judgment of Conviction:</u>

    Idaho Federal District Court. See caption, above.

2.  <u>Date of Judgment of Conviction:</u>

    Judgment was entered against Mr. Boam on December 15, 2021. He is currently

being held in federal custody in the United States Penitentiary in Tucson Arizona.

3.    Length of Sentence:

Mr. Boam was sentenced to 45 years of total confinement in federal prison: 30 years on counts one through sixteen, to be served concurrently, and 14 years on count seventeen, to be served consecutively to his sentence on counts one through sixteen.

4.    Nature of Offenses Involved:

Mr. Boam was convicted on the following charges: (i) sixteen counts of attempted sexual exploitation of a minor child under 18 U.S.C. § 2251(a), and (ii) one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B).

5.    Nature of Plea:

Mr. Boam pled not guilty on all counts.

6.    Nature of Trial:

Mr. Boam had a five (5) day jury trial: September 7, 8, 9, 10, and 20, 2023.

7.    Testimony at Trial:

Mr. Boam personally testified at trial.

8.    Appeal:

Mr. Boam timely appealed his judgment.

9.    Course of Proceedings on Appeal:

On December 20, 2021, Mr. Boam timely appealed his conviction and sentence to the Ninth Circuit Court of Appeals. On February 9, 2023, Mr. Boam presented oral arguments. On May 12, 2023, the Court denied his appeal and affirmed his conviction. On August 14, 2023, Mr. Boam filed a petition for *en banc* rehearing with the Court. On

September 8, 2023, the appellate panel denied Mr. Boam's petition. On December 12, 2023, Mr. Boam filed a petition for a writ of certiorari to the U.S. Supreme Court. On April 15, 2024, the U.S. Supreme Court denied Mr. Boam's petition in its entirety.

10.    Other Petitions, Applications, or Motions:

Other than his appeal to the Ninth Circuit, Mr. Boam has not previously filed any petitions, applications, or motions with respect to his judgment in any federal court.

11.    Concise Statement of Grounds to Vacate or Set Aside Judgment:

a.    Ground One: Denial of Effective Assistance of Counsel:

Mr. Robin Dunn, legal counsel for Mr. Boam, failed to timely disclose his proposed witnesses and exhibits, including Mr. Boam's proposed expert witnesses. The Court ultimately excluded the expert witnesses, and Mr. Dunn was limited thereafter to calling just 9 of his remaining 22 witnesses. He was also limited to admitting just 2 of his 44 proposed exhibits. See attached "Additional Statement of Facts" for further details.

b.    Ground Two: Denial of Effective Assistance of Counsel:

Upon information and belief, Mr. Dunn was engaged in the illegal use and distribution of fentanyl and/or methamphetamine at the time of Mr. Boam's trial. Upon further information and belief, this impacted Mr. Dunn's performance and his ability to provide effective assistance to Mr. Boam at trial. See attached "Additional Statement of Facts" for further details.

12.     Mr. Boam did not previously present the aforementioned issues at trial because they involved the ineffective assistance of Mr. Dunn, who was conducting the trial. Mr. Dunn was also representing Mr. Boam on appeal, at least until the time of his (Mr. Dunn's) arrest based on his use and distribution of fentanyl and/or methamphetamine.

13.     Mr. Boam does not have any other petitions or appeals pending in any other court or jurisdiction as to the judgment under attack in the present motion.

14.     The following attorney(s) represented Mr. Boam during these proceedings:

   a.     Preliminary hearing: Robin Dunn, PO Box 277, Rigby, ID 83442.

   b.     Arraignment and plea: Robin Dunn, PO Box 277, Rigby, ID 83442.

   c.     Trial: Robin Dunn, PO Box 277, Rigby, ID 83442.

   d.     Sentencing: Robin Dunn, PO Box 277, Rigby, ID 83442.

   e.     Appeal: Robin Dunn, PO Box 277, Rigby, ID 83442; Brian M. DeFriez, 5210 Cleveland Blvd, Ste 140, PMB 228, Caldwell, ID 83607 (Mr. DeFriez assisted Mr. Dunn with briefing and oral argument preparations; Mr. DeFriez did not formally represent Mr. Boam in an attorney-client capacity).

   f.     Post-conviction proceedings: Stephen S. Hart, 482 Constitution Way Suite 313, Idaho Falls, ID  83402-3537 (Mr. Hart was recently retained by Mr. Boam and is representing him for post-conviction purposes only).

   g.     Appeal from post-conviction proceedings: n/a.

15.     Mr. Boam was sentenced on all counts of his indictment in the same court, and at approximately the same time. See paragraphs 1-5, above.

16.    Mr. Boam does not have any future sentences to serve after the completion of his present sentence; he still has approximately 42.5 years to serve on his sentence.

WHEREFORE, Mr. Boam prays that the Court grant him all relief to which he may be entitled, including an order allowing discovery, an order allowing him to supplement the record and conduct an evidentiary hearing, and ultimately an order vacating his judgment of conviction and (i) discharging him, or (ii) granting him a new trial.

Dated: July ____27ᵗʰ____, 2024.


_____
Stephen S. Hart
HART LAW OFFICES, P.C.
Attorney for Defendant

## ADDITIONAL STATEMENT OF FACTS

Mr. Boam and Melinda Scott ("Melinda") were married in February 2012. During their marriage, Mr. Boam farmed and ranched for a living, whereas Melinda ran a daycare inside the parties' home. As part of the daycare setup, Melinda needed to keep continual video surveillance on the children in the home. She also needed a second camera to help monitor the master bathroom, as some prescription drugs had been taken from the medicine cabinet.[1] As a result, Mr. Boam purchased the two cameras on his Amason account. It is undisputed from the trial record that both cameras were purchased in the same order. Melinda was with Mr. Boam at the time of purchase and helped pick them out.

The two cameras soon arrived in the same Amazon box, and Melinda was present with Mr. Boam to help open them. The parties then went into their small master bathroom to plug the camera into the wall, from which vantage point the camera could capture the entire bathroom. The camera worked by sending data wirelessly to a phone via a BVCAM app. In addition to plugging the camera into the wall, Melinda helped install the accompanying BVCAM app on Mr. Boam's iPhone, meaning she had access to the app.

At the time of installation, Mr. Boam owned an iPhone 6, but he later switched to an iPhone XR when he dropped the iPhone 6 into some canal water. Importantly, it was Melinda who purchased the iPhone XR for Mr. Boam, and so she had access to the phone

---

[1] This second camera, referred to during trial as the "spy" camera by the Government, was really just a USB camera; it was not "hidden" in the sense that it was visible from the wall.

Motion to Vacate or Set Aside Judgment | Page 7

and could get into the phone anytime she wanted. The family also had an iCloud storage account linked to Mr. Boam's iPhone 6, and so any images taken by the BVCAM app were instantly transferred from the iPhone 6 into the cloud, and later to the iPhone XR.

Mr. Boam's stepdaughter, T.A., worked at the time on Mr. Boam's farm, despite having allergy problems. After her work, she would often use the master bathroom shower. She would sometimes even come into the master bedroom at night and sleep with Melinda and Mr. Boam due to her nightmares. During this period, i.e., when T.A. was working with Mr. Boam, the BVCAM was installed. Unfortunately, it picked up videos and pictures of T.A. as she was in the process of showering. The record shows that none of the videos or pictures had sexually explicit content—they contained nudity, but no sexual activity.

When asked about the matter at trial, Mr. Boam flatly denied having ever spied on T.A., and he also denied seeing the BVCAM materials. The Government was not able to produce any evidence—not *any* evidence—to show that Mr. Boam ever accessed or viewed the BVCAM materials. Mr. Boam passed a polygraph to this effect with Dale Rogers, one of the most credentialed polygraphers in the State in matters of alleged sexual abuse.[2]

---

[2] Dale Rogers is a senior forensic polygrapher with the Sex Offender Management Board, and he has performed thousands of polygraphs during his career—the majority of which have involved sexual abuse allegations. See https://idahopolygraph.com/meet-our-team/dale-rogers/. The District Court ultimately refused to let Mr. Boam introduce Mr. Roger's proposed testimony (or polygraph reports) into evidence, saying they was not timely disclosed. Of significance, the Court later acknowledged that the reports were relevant, though it decided to exclude on F.R.E. 403 grounds, and Mr. Dunn did not further object to the Court's decision, as will be discussed in greater detail, below.

Unfortunately, Mr. Dunn did not fully disclose Dale Rogers as a witness, and so his proposed testimony (as well as the polygraph results) were excluded from trial.[3]

### **The Rape Allegations**

The Government introduced the following alleged evidence at trial: (1) that Mr. Boam gave T.A. a drug called Ambien and engaged in vaginal intercourse in his bed; (2) that Mr. Boam exposed himself to her in a hotel room and attempted to penetrate T.A.'s vagina with his penis; (3) and that in 2014, Mr. Boam purchased a transparent shower curtain that was placed in the same shower where T.A. was later surreptitiously recorded while showering. This was not a sideline discussion in the Government's case; it was one of the main points in the case, and the Government made no secret about how it intended to use the allegations. Specifically, in its opening statements, the Government invited the jury to use the allegations as a springboard to find that Mr. Boam was guilty:

---

[3] On August 30, 2021, the District Court explained that Mr. Dunn had failed to submit a copy of the proposed polygraph tests, together with the questions that were asked in the test. The Court went on to explain that the probative value of the tests, assuming they were correctly submitted, would be substantially outweighed by the potential for prejudice to the jury. At a minimum, Mr. Dunn should have attempted to differentiate between the polygraph results concerning his pending charges under 28 USC § 2255, and those concerning the alleged rape. See below. Mr. Dunn should have argued that the jury was *not* being asked to enter a verdict on the alleged rape and, as a result, it could *not* be prejudiced by means of the polygraph on the issue of the alleged rape. On August 30, i.e., the same day as the Court's decision, and in apparent response to the decision, Mr. Dunn attempted to submit copies of the polygraph tests. The next day, on August 31, the Court issued a new decision, saying that the tests were still too prejudicial to be admitted at trial. A reasonable attorney in Mr. Dunn's position would have recognized that the jury was *not* being asked to decide the issue of the alleged rape and that the test could *not* prejudice them in that instance. Unfortunately, Mr. Dunn did not attempt to address the issue further, so both tests were excluded and were never seen by the jury, even as it relates to the 404(b) evidence.

penis.

Now, these incidents will show you what is apparent in this case, the defendant's motives and intent for creating the produced images.

Now, this abuse goes unreported until the fall of the

It is difficult to overstate the impact these allegations must have had on the jury—alleging that not only did Mr. Boam spy upon T.A., but leading up to the event, he also drugged her and forcible raped her, and that the jury was entitled to use the later allegations (i.e., the rape allegations) to prove the former allegations (i.e., the video allegations). Importantly, the Government never bothered to charge Mr. Boam with these other alleged crimes—a shocking omission given the severity of the allegations (drugging + forced vaginal penetration) compared to the charges he was facing in this matter (disputed wall-cam video allegations). In the end, the allegations did not even come to light until T.A. had completed a series of "interviews" regarding Mr. Boam, at which point she suddenly "remembered" the incidents and reported them to her interviewer in response to their questions. Mr. Boam hired a separate expert witness, Carrie Wright, a licensed social worker, who examined T.A. forensic interviews and was prepared to testify as to their unreliability. Unfortunately, Mr. Dunn failed to timely disclose her as a proposed expert witness, and so the Court did not allow her to testify at trial. Mr. Boam also took a separate polygraph with Mr. Dale Rogers in which he denied the rape allegations, and again he passed. However, Mr. Dunn failed to timely disclose this test, and so it was excluded from trial.

Motion to Vacate or Set Aside Judgment | Page 10

The following screenshots capture the content of the proposed polygraph evidence, showing that it would almost certainly have assisted Mr. Boam in his defenses:

**P202968**

| | QUESTION FORMULATION | RESPONSE |
|---|---|---|
| R1 | After the camera was installed in the bathroom and prior to your wife confronting you with the camera images, did you observe TA in the bathroom from the camera images on your phone? | No |
| R2 | After the camera was installed in the bathroom and prior to your wife confronting you with the camera images, did you observe TA in the bathroom naked on any of the camera images on your phone? | No |
| R3 | After the camera was installed in the bathroom and prior to your wife confronting you with the camera images, did you ever masturbate to the camera images on our phone of TA naked in the bathroom. | No |
| | | |

**Test # 1- P202968**

| R1 | No Deception Indicated  (Truthful) |
|---|---|
| R2 | No Deception Indicated  (Truthful) |
| R3 | No Deception Indicated  (Truthful) |
| | |

**P202967**

| | QUESTION FORMULATION | RESPONSE |
|---|---|---|
| R1 | Did you ever place TA's hand on your penis ? | No |
| R2 | Did you ever touch TA on her body in a sexual manner, over or under her clothing ? | No |
| R3 | Did you ever stand in front of TA in a motel room naked, that you remember ? | No |
| | | |

**Test # 1- P202967**

| R1 | No Deception Indicated  (Truthful) |
|---|---|
| R2 | No Deception Indicated  (Truthful) |
| R3 | No Deception Indicated  (Truthful) |
| | |

On August 31, 2021—just days to trial—the Government filed a document titled "objection to undisclosed evidence," saying that "to-date, the Defendant has not disclosed *any* evidence." The Government pointed out that according to the "standard reciprocal discovery elections" signed by the parties, Mr. Boam had certain disclosure duties that were ignored. Mr. Dunn had not disclosed any detailed witness and exhibit lists, and in response to the Government's objection, Mr. Dunn hastily made his disclosures. Even so, many of the disclosures were incomplete—in particular, the expert witness disclosures were still incomplete. On September 1, the Court ruled on the Government's objection, saying that

Mr. Dunn had failed to timely produce his discovery (including his substantive, non-impeachment evidence) under Fed. Crim. R. 16. The Court noted it would address the admissibility of Mr. Boam's evidence "on a case-by-case basis" at trial, but it warned that his evidence would *not* be admissible "absent a showing of good cause as to why the defense did not timely file an exhibit list including [the proposed] evidence." Almost all of Mr. Boam's affirmative evidence was ultimately excluded from the trial.[4]

In the end, the evidence was so disproportionate—so one-sided against Mr. Boam—that it calls into question the fairness of his trial. For its part, the Government admitted several dozen exhibits into the trial record. By contrast, Mr. Dunn admitted only two exhibits of forty-four proposed exhibits: First, he admitted the first page of a bank statement obtained from the Government in discovery; Second, he admitted a three-page exhibit containing pictures of Melinda, which picture(s) had been previously referenced by one of the Government's witnesses. Other than that, Mr. Dunn did not admit *any* exhibits into the record. Just prior to trial, he listed twenty-five proposed witnesses in his

---

[4] At trial, the Court confirmed that it would *not* allow Mr. Dunn to use exhibits that were not already known to the Government prior to his untimely disclosure on August 31. At this juncture, Mr. Dunn could only capitulate, saying: "I agree with the Court. Most of our exhibits were for the purpose of refreshing memory, not for exhibition to the jury. And most of the exhibits -- not all, but most of them came from discovery. They would be Bates-numbered from the Government. So, I don't expect there is any exhibits that I would try to offer other than to refresh memory if someone couldn't remember, for example, a particular text message or something. But I would never want to introduce that to the jury." To further illustrate Mr. Dunn's omissions, the Court excluded Ms. Carrie Wright as an expert on the basis that "although her identity was disclosed...in a timely manner, these opinions were not disclosed to the Government until last night. And that is precisely why we require disclosure, particularly of expert witnesses, so that the opposing party has time to respond and can, first of all, challenge the expert by way of...what we call a *Daubert* motion or Rule 702 motion to exclude...and also to obtain their own expert on the topic."

disclosures, three of whom were his proposed expert witnesses.[5] The Court excluded all of the expert witnesses, and thereafter, Mr. Dunn only called nine of the twenty-two remaining lay witnesses. Again, this was due to Dunn's failure to make disclosures.

### Lack of Evidence

It is clear from the transcript that the Government had a *very* tenuous case against Mr. Boam. For instance, the Government admitted on cross-examination that they had seized and examined dozens of electronic devises from Mr. Boam's possession, e.g., thumb drives, cameras, SD cards, etc., but that they did not find any compromising pictures or videos of T.A. on those devises. In fact, some of the Government's key witnesses, such as Officer Johnson and Officer, Roedel, admitted that the only location where the pictures and videos of T.A. had been found was on the family iCloud account, and yet they failed to show that Mr. Boam had ever accessed the materials within the family iCloud. One of the Government's witnesses, Officer Johnson, went so far as to admit on cross-examination that he did not uncover any evidence—absolutely *none*—that Mr. Boam had ever viewed the pictures or videos, either on his phones or in the family iCloud.[6] The uncontested

---

[5] Aside from Dale Rogers and Carrie Wright, Dunn attempted to disclose a third expert witness, Christina Finnerty, who is a sleep medicine specialist, and who was supposed to testify as a rebuttal expert on the issue of Melinda Scott's use of Ambien.

[6] In other words, the Government's presentation of evidence was limited (at its core) to the fact that videos and images of T.A. had been uploaded to his iCloud from the BVCAM app, at that was the sole evidentiary basis on which to say that Mr. Boam had violated 18 U.SC. § 2251, et seq. Importantly, the iPhone 6, which was Mr. Boam's original iPhone, and which contained the controversial BVCAM video app, was also used as a family phone as a "Game of Thrones" game app, and everyone had access to the phone, including Melinda. Neither Melinda nor T.A. nor the United States was able to refute this fact.

evidence show that Melinda had set up his phone and liked it to the iCloud account. Mr. Boam was a farmer and had little skill for things like apps or cloud storage accounts.

It was in this context that Mr. Boam was convicted and sentenced to 45 years in federal prison, tantamount to a life sentence. The Government bolstered its case—indeed, it can be said that it premised its case—using uncharged and unproven rape allegations, and Mr. Dunn did *nothing* of substance to try and counter the allegations. The efforts he did make (e.g., the polygraph, the other proposed experts) were excluded due to his pretrial failures to follow the Court's disclosure guidelines. At trial, he called only a fraction of Mr. Boam's lay witnesses, and he admitted only two of the proposed exhibits (or 5% of the exhibits) due his admitted failures to follow the pretrial disclosure guidelines.

## **Drug Problems**

Following Mr. Boam's unsuccessful appeal, Mr. Dunn was arrested in Eastern Idaho and charged with multiple counts of possession and attempted distribution of fentanyl pills, commonly known as "dirty thirty" pills. At the time of his arrest, Mr. Dunn was a passenger in a vehicle in which the drugs were found. He claims to have been providing legal representation to the driver of the vehicle, but that claim was never substantiated. During a subsequent search of the vehicle, the officers found a check from Mr. Dunn to the driver (who was "high") in the amount of $7,900. He was then searched, and police found several incriminating items on his person, including a package of Narcan (used to reverse the effects of an opioid overdose), a clear baggie with several fentanyl pills, and a

Motion to Vacate or Set Aside Judgment | Page 15

crumpled-up aluminum foil in his front left pants pocket. The officers asked Mr. Dunn if he had any more illegal items on his person, to which he answered no. However, after further questioning, he admitted having approximately 30 more pills in his boot.

Just recently, Mr. Dunn pled guilty to one felony count of conspiracy to distribute fentanyl and methamphetamine. He is currently awaiting sentencing, where the State is recommending that he serve up to three and a half years in prison for his crimes.

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2024, I served a copy of the foregoing document

through CM/ECF on all registered participants to the action, as reflected in the NOTICE

OF ELECTRONIC FILING registry, as noted in the official case registry, including:

**William M Humphries**
United States Attorney's office
bill.humphries@usdoj.gov

**Justin K Paskett**
United States Attorney's Office
justin.paskett@usdoj.gov

**John Christopher Shirts**
DOJ-USAO
john.shirts@usdoj.gov

Dated: July ___27___, 2024

_____
Stephen S. Hart
HART LAW OFFICES, P.C.
Attorney for Defendant

STEPHEN S. HART
HART LAW OFFICES, P.C.
482 Constitution Way Suite 313
Idaho Falls, ID  83402-3537
Phone: (208) 524-3272
Fax: (208-524-3619
Idaho State Bar # 1987
Email: shart@hartlawif.com

Attorney for Defendant, Tel James Boam

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TEL JAMES BOAM,<br><br>Defendant | Case No. 4:20-cr-00188-BLW-1<br><br>**LEGAL BRIEF IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT**<br><br>28 U.S.C. § 2255 |

Defendant Tel James Boam, through his undersigned counsel of record, Stephen S. Hart, hereby submits this legal brief in support of his motion to vacate his judgment.

## LEGAL ANALYSIS

Mr. Boam seeks to vacate or set aside his judgment of conviction under 28 U.S.C. § 2255 based on a denial of effective assistance of counsel at trial, or the "ineffective assistance of counsel." In the seminal case, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the U.S. Supreme Court explained that the constitutional principle of "effective assistance of counsel" is measured in terms of providing an accused

criminal defendant with "a fair trial." *Id.,* at 686. The Court explained that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* The Court concluded by saying, "when a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.,* at 687. Using this criterion, it is easy to see that Mr. Dunn's negligent performance as Mr. Boam's attorney "fell below an objective standard of reasonableness."

Specifically, Mr. Dunn failed to timely disclose *any* of Mr. Boam's favorable evidence to the Government. The Court's discovery orders said he needed to do so at least 45 days before trial, and it is clear from the record (including his hurried effort to make the necessary disclosures on the eve of trial) that his failures were not a strategic decision in furtherance of Mr. Boam's defenses. They were sheer oversight, sheer ineffective assistance in terms of preparing for trial. This goes beyond the issue of depriving Mr. Boam of his defense against his pending charges, i.e., 28 U.S.C. §§ 2251 to 2252, though that was a serious lapse in his representation. It also goes to the issue of failing to address (by means of expert testimony and exculpatory exhibits) the State's proposed Rule 404(b) evidence, i.e., the uncharged, unproven rape allegations. For instance, Mr. Boam failed to timely (or

fully) disclose Dale Rogers and Carrie Wright as experts, both of whom had affirmative testimony which would have cast severe doubt on the 404(b) rape allegations.[1]

See also *United States v. Laureys*, 866 F.3d 432 (D.C. Cir. 2017), where the Court granted defendant's Section § 2255 motion on the grounds that his counsel unreasonably failed to obtain mental health expert testimony when doing do so would have aided his defense and mitigated the effects of the Government's adverse evidence. The Court explained: "Trial counsel's failure to secure expert testimony cannot properly be excused as a reasonable, calculated choice." *Id.,* at 440. The same is true for Mr. Boam's case—Mr. Dunn did *not* fail to call Mr. Boam's expert witnesses based on a "reasonable, calculated choice." It was done out of sheer neglect, sheer failure to follow the rules. As detailed in

---

[1] If the issue had been properly handled by Mr. Dunn, Mr. Boam believes that he stood a good chance of having the Rule 404(b) allegations excluded from the trial. According to the Ninth Circuit case law, "in order for evidence of a prior accusation to be admissible, there must be sufficient, independent evidence (besides the accusation alone) to support a finding that the prior conduct occurred." *United States v. Bailey*, 696 F.3d 794, 802 (9th Cir. 2012). That is just what the Court in *Bailey* did—it excluded proposed 404(b) evidence because it was not supported by sufficient *credible* evidence. At a minimum, Mr. Dunn could have (and should have) taken steps to alert the Court to the fact that Mr. Boam's expert witness testimony—that of Mr. Rogers and Ms. Wright—was largely a rebuttal of the Government's 404(b) allegations and was necessary for him to counter the Government's allegations. Mr. Boam cannot find *anything* in the federal case law that says the Government had the right to shield its proposed 404(b) allegations from Mr. Boam's rebuttal evidence. The Court seemed to recognize this point at trial, at least in other contexts, e.g., when Mr. Dunn objected to the admission of one of the Government's undisclosed exhibits, and the Court allowed the exhibit into evidence, saying: "It's rebuttal, Mr. Dunn. Counsel is not required to disclose rebuttal. That's what makes it rebuttal." Tr. p. 830. Of course, Mr. Boam is not faulting the Court for allowing the Government to admit the undisclosed exhibit into evidence. Rather, Mr. Boam is using the incident to highlight the fact that Mr. Dunn could have (and should have) put in the requisite effort to use *his* expert witnesses and *his* exhibits as rebuttal to the Government's 404(b) allegations. Mr. Boam was entitled to effective legal counsel who could properly discern the issues and use his evidence as a means of trying to counter the harmful effects of the 404(b) rape allegations.

Mr. Boam's motion, it is also likely the result of Mr. Boam's illegal drug activities, which would certainly have impacted his ability to provide effective assistance of counsel.

As the Court explained in *Bailey,* supra, "we do not suggest that a jury could never find a defendant guilty based on the [other available testimony]...But when the government's case is built around a single witness with questionable motives, it can hardly be said that the government's case was strong." *Id.,* at 804. The same is true for Mr. Boam; While he cannot say that he would *never* have been convicted without the 404(b) allegations, what he *can* say, and what the record unquestionably demonstrates, is that he did *not* get a fair chance to defend himself at trial given Mr. Dunn's non-disclosures. The Government used the 404(b) allegations (drugging and raping T.A.) to paint Mr. Boam as a sexual predator, thereby conditioning the jury to draw the relatively easy intellectual and emotional conclusion that Mr. Boam was spying on T.A. In response, Mr. Dunn did *nothing* of substance to counter the allegations, which means Mr. Boam did not get a fair trial.

For additional case law, see *United States v. Fulton*, 5 F.3d 605 (2d Cir. 1993) (because defense counsel was engaged in drug trafficking related to the offense for which defendant was convicted, defendant was deprived of Sixth Amendment rights); *Owens v. United States*, 483 F.3d 48 (1st Cir. 2007) (failure of counsel to inform a defendant of his right to testify constitutes performance outside of an objective standard of reasonable competence; remanded for an evidentiary hearing); *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001) (ineffective assistance because counsel failed to consult expert, conduct research, or request copies of studies relied on by expert witness); *Lockett v. Anderson*, 230

F.3d 695, 716 (5th Cir. 2000) (ineffective assistance because counsel failed to investigate possible mitigation evidence); *Cone v. Bell,* 243 F.3d 961, 979 (6th Cir. 2001) (ineffective assistance because counsel failed to offer mitigation evidence at sentencing hearing), *cert. granted,* 122 S. Ct. 663 (2001); *Battenfield v. Gibson,* 236 F.3d 1215, 1235 (10th Cir. 2001) (ineffective assistance because counsel's failure to present mitigating evidence at penalty phase prejudiced defendant); *Reynolds v. Chapman,* 253 F.3d 1337, 1348 (11th Cir. 2001) (ineffective assistance of counsel because counsel labored under conflict of interest).

Of course, Mr. Boam acknowledges that under *Strickland,* he has the burden to show "by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Chacon v. United States*, No. 4:05-CR-014-BLW, 2010 WL 3735700, at *2 (D. Idaho Sept. 15, 2010) (Judge Winmill presiding). However, as in *Chacon,* Mr. Boam believes it is reasonably probable that the jury's verdict would have been different if he had been allowed to present his evidence. In *Chacon,* the Court found that defense counsel was potentially ineffective on several grounds, e.g., failing to familiarize himself with the law and failing to prepare his client for sentencing. The Court went on to explain that defendant had "alleged very specific facts which, if found to be true, could state grounds for relief on one or more of the alleged instances of ineffective assistance of counsel," and that "several of the claims are based on alleged discussions and other matters outside of the record." The Court concluded by saying "an evidentiary hearing would most certainly be required to address and resolve" the claims, as it was apparent that the errors has prejudiced defendant in terms of his sentencing.

Legal Brief in Support of Motion to Vacate or Set Aside Judgment | Page 5

The same is true for Mr. Boam. He has raised significant allegations in this motion (failure to make critical disclosures, likely drug impairment) that caused him great prejudice at trial. As to the likelihood of a different outcome, the Court need look no further than the Government's opening statement to the jury, in which it used the 404(b) allegations as a springboard for the jury to find Mr. Boam had spied on T.A., opening inviting them to use the allegations as evidence of "defendant's motives and intent for creating the produced images." At a minimum, Mr. Boam was entitled to have competent counsel who could marshal his available rebuttal evidence—his favorable polygraph evidence, his forensic interview analysis, and his exculpatory exhibits—to help counter the allegations. Without competent representation, he was helpless in the face of the 404(b) allegations.

Understandably, the Court was concerned about confusing the jury with Mr. Boam's polygraph results, and Mr. Boam acknowledges that the relevant case law gives the Court discretion in admitting polygraph tests into evidence. However, that concern should *not* have extended the tests related to the alleged rape, and Mr. Dunn should have brought this distinction to the Court's attention. After all, the alleged drugging and raping that was *not* part of Mr. Boam's formal charges and, hence, it was *not* part of the jury's formal verdict. Mr. Boam deserved to have counsel that could explain this nuance to the Court. If Mr. Boam had been able to successfully rebut the 404(b) allegations, it would have called Melinda's and T.A.'s credibility into question, which in turn would have called their alleged ignorance of the USB wall-cam and the BVCAM app into question.

Legal Brief in Support of Motion to Vacate or Set Aside Judgment | Page 6

### P202967

| | QUESTION FORMULATION | RESPONSE |
|---|---|---|
| R1 | Did you ever place TA's hand on your penis ? | No |
| R2 | Did you ever touch TA on her body in a sexual manner, over or under her clothing ? | No |
| R3 | Did you ever stand in front of TA in a motel room naked, that you remember ? | No |
| | | |

### Test # 1- P202967

| R1 | No Deception Indicated (Truthful) |
|---|---|
| R2 | No Deception Indicated (Truthful) |
| R3 | No Deception Indicated (Truthful) |
| | |

Legal Brief in Support of Motion to Vacate or Set Aside Judgment | Page 7

**P202968**

| | QUESTION FORMULATION | RESPONSE |
|---|---|---|
| R1 | After the camera was installed in the bathroom and prior to your wife confronting you with the camera images, did you observe TA in the bathroom from the camera images on your phone? | No |
| R2 | After the camera was installed in the bathroom and prior to your wife confronting you with the camera images, did you observe TA in the bathroom naked on any of the camera images on your phone ? | No |
| R3 | After the camera was installed in the bathroom and prior to your wife confronting you with the camera images, did you ever masturbate to the camera images on our phone of TA naked in the bathroom. | No |
| | | |

**Test # 1- P202968**

| R1 | No Deception Indicated  (Truthful) |
|---|---|
| R2 | No Deception Indicated  (Truthful) |
| R3 | No Deception Indicated  (Truthful) |
| | |

To Mr. Boam's knowledge, the purpose of shielding the jury from certain evidence under F.R.E. 403 is to protect them (the jurors) from deciding the pending charges "on a purely emotional basis." See Advisory Committee Notes to Rule 403, 1972 Proposed Rules. The comments go on to explain that "unfair prejudice" means "an undue tendency

Legal Brief in Support of Motion to Vacate or Set Aside Judgment | Page 8

to suggest decision on an improper basis." To Mr. Boam's knowledge, this policy refers to the decision to convict or acquit him on his pending charges; it does *not* refer to the jury's decision on whether to believe uncharged 404(b) allegations. For all its pretensions, the Government did not bother to seek charges in the matter, which means it was *not* a pending issue for decision and, hence, not subject to Rule 403 considerations. To Mr. Boam's knowledge, he was free to refute the allegations with all available evidence, and Mr. Dunn's failure to do so is a clear indication that Mr. Boam was prejudiced at trial.

WHEREFORE, Mr. Boam prays that the Court grant him all relief to which he may be entitled, including an order allowing discovery, an order allowing him to supplement the record and conduct an evidentiary hearing, and ultimately an order vacating his judgment of conviction, either (i) discharging him, or (ii) granting him a new trial.

Dated: July **27ᵗʰ**, 2024

Stephen S. Hart
HART LAW OFFICES, P.C.
Attorney for Defendant

Legal Brief in Support of Motion to Vacate or Set Aside Judgment | Page 9

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2024, I served a copy of the foregoing document through CM/ECF on all registered participants to the action, as reflected in the NOTICE OF ELECTRONIC FILING registry, as noted in the official case registry, including:

**William M Humphries**
United States Attorney's office
bill.humphries@usdoj.gov

**Justin K Paskett**
United States Attorney's Office
justin.paskett@usdoj.gov

**John Christopher Shirts**
DOJ-USAO
john.shirts@usdoj.gov

Dated: July 27, 2024

Stephen S. Hart
HART LAW OFFICES, P.C.
Attorney for Defendant