# ATTACHMENT B

STEPHEN S. HART, ESQ.
HART LAW OFFICES, P.C.
482 Constitution Way, Suite 313
Idaho Falls, ID 83402-3537
Phone: (208) 524-3272
Fax: (208) 524-3619
Idaho State Bar # 1987
Email: shart@hartlawif.com
Attorneys for Defendant, Tel James Boam

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>TEL JAMES BOAM,<br>Defendant. | **Case No. 4:20-CR-00188-BLW-1**<br><br>**DECLARATION OF EVY JO GILSTRAP** |

EVY JO GILSTRAP, declares and states as follows:

1. I am over the age of 18 years and competent to make this declaration. I reside in Idaho Falls, Idaho
2. I worked as a legal assistant for Attorney Robin Dunn for approximately six years and have personally known Mr. Dunn for over 40 years. Robin had served as a county/city prosecutor for over 35 years, while also practicing private law in his personal law office. He was well versed and disciplined in adhering to legal protocol and presenting sound legal arguments in his cases. He was a good litigator and required attention to detail when preparing and filing case pleadings. He had great respect for the court system, attorneys, and judges.
3. In late August of 2020, Robin agreed to represent TJ Boam. TJ was a

defendant in a county case and had entered a guilty plea. He came to Robin requesting Robin's advice on his plea agreement. There was a threat of the case being picked up by the Federal Court. Rob advised TJ to reject the plea agreement and to withdraw his plea. T.J. withdrew his plea and Robin took the case. Our office had not defended a federal criminal case in the six years I had worked for him.

4. In November 2020, Mr. Dunn nearly died after contracting a serious case of COVID. He spent three weeks in intensive care. He had suffered severe oxygen deprivation. Upon returning to the law office, he had an oxygen tank strapped to him daily. He could barely walk a few feet without being tired, was unable to focus and clearly was not well.

5. Due to Covid, Robin had been out of the office for six – seven weeks. When he returned to the office, I noticed almost immediately he was "different/off." His pleadings and other work had errors in them which were out of character for Robin. He was disinterested in current clients and cases. He became more reclusive, and I noticed drastic personality changes and attitudes.

6. Due to his health, in February 2021, Mr. Dunn filed a motion with the federal court for a court appointed assistant backup counsel for Mr. Boam's case should he not be able to continue. A motion to continue Mr. Boam's trial was also filed. TJ came into our office on nearly a daily basis to work on his case. He had passed two lie detector tests, had a desire to

help gather evidence which he believed along with Robin's years of experience as a prosecutor/attorney would prove his innocence.

7. While preparing for the Federal trial, it was obvious, Robin was struggling to devote the work and attention to not only TJ Boam's case but all our cases. I was working many overtime hours trying to help clients, prepare pleadings, manage the office while he was often missing in action, often with TJ. It was as if Robin was taking on the role of a father figure for TJ Boam rather than his attorney. TJ expressed to me that Robin told him they could prove their case and TJ put confidence in Robin though I could see serious trouble. I was in a tough position as an employee. TJ's grandpa approached me about his serious concerns about what he was seeing with Robin. We could see Robin was not well mentally or physically and I feared for the upcoming trial.
8. In the spring of 2021, Robin suffered what was explained to be "widow maker" while at home. His wife called 911 and EMTs were able to arrive quickly and get Robin to the hospital where emergency heart surgery was performed. Once again, he nearly died and suffered oxygen deprivation.
9. As the Boam trial date grew closer, I nervously worried as I could see things falling in the cracks. I asked Robin about deadlines for witnesses, discovery, evidence etc. to be submitted. He told me he was not worried because since the prosecution had been given an extension for submission, they had to give him the same courtesy. That was not the

case. Nearly all our evidence was not timely and was not allowed in the trial. As I put in extensive hours along with my assistant to go through discovery, witnesses, evidence, serve subpoenas, and prepare binders for the trial , Robin's focus, effort, and attention to the case details was severely lacking.

10. Robins' behavior became more bizarre. He began speaking about defending the people society had thrown away. He grew his hair out long, grew a long white beard and wore dark sunglasses saying no one would be able to recognize him. He literally looked like Santa Claus rather than the clean-cut attorney he had always been previously. I received a few calls from the court relaying the judge requested "Mr. Dunn show up in a shirt and tie" and not the "Garcia" shirts etc. Just a month before Robin had Covid in 2020, he had been called to be a "bishop" in his church. After Covid, he rejected nearly all the things he once believed in, seemed like a completely different person.

11. Instead of preparing TJ's case, he kept more to himself and spent most of his time at the jail with the "new" clients. The majority of the new clients were charged with serious drug trafficking offenses. Rob became paranoid about being bugged, followed, and filed various complaints against the local police and jails on behalf of his "new" clients. As we began TJ's appeal process, Robin began to represent a drug trafficker by the name of Aaron Wadsworth. Robin described Aaron as a "kingpin" and

that he was very important to these people. Soon, he was representing Aaron's girlfriend Vivian Exler (who he would eventually be arrested with) and Aaron's friend last name Sibbett. He truly believed these people had been wronged by the system and he could help them.

12. Robin asked if I had ever watched the shows Sons of Anarchy or Breaking Bad, which I knew nothing about. He seemed to compare his current role to these fictional characters. Robin stated to me he would never expose us in the office or tell us anything he was doing in regard to hiw work defending these people. He said they would not be calling the office and would only deal directly with him on his cell phone. I remember asking him why are you so worried about helping these people? I need your help here with the clients we already have.
13. A few days before the trial as we were scrambling, Robin and TJ were gone for more than half the day. They had gone shopping at a jewelry store and bought matching necklaces. None of this made sense. Robin did not seem to realize the gravity of the trial and that TJ's life was on the line.
14. We had evidence relating to past false accusations Mindy (TJ's ex-wife) had made against her former husband, who was the father of the two older daughters. We found other beneficial evidence regarding Mindy, but as with other items, Robin did not follow up.
15. The trial which occurred in September 2021 was a disaster. Robin's once

confident, organized, competent strong court presence was nowhere to be found. His voice was barely audible in the courtroom. His questioning was disjointed with witnesses often not sure how to answer the questions. We sat in disbelief. Much of the evidence was disallowed. The prosecutors' frequent objections as to relevance of Robin's meandering questioning, were sustained in nearly all instances. The judge admonished Robin over and over again. Robin appeared unprepared and inexperienced, physically, and mentally not well. I was approached by many at the trial questioning what was going on with Robin. Most of the witnesses Robin was going to call, family, business associates, friends and even hostile witnesses who were on the witness list were never called. He put TJ on the stand unprepared, and subject to questioning which seemed to seal his fate. This was not Robin Dunn, the smart, confident attorney people had known for nearly 40 years.

16. On one occasion when he was supposed to be working on TJ's case, I had not been able to reach him for nearly 2 days. Upon his return to the office, Robin stated that the "big boys" from Southern California had buried some money in the desert to pay the bill for representing Wadsworth and Exler. He took Sibbett (a friend of Aaron Wadsworth) with him to help find the coordinates and retrieve the money, which of course was never found. The whole story seemed insane to me.

17. Rob started being impatient, angry, and said inappropriate things in front

of clients. He drove off most of his friends. He was spending much of his time with several much younger female "clients" he was defending who were deeply embedded in drug trafficking and later it was discovered he was having intimate relations with several of them. He gave them money and bought them things. On one occasion, Robin disappeared for over a week. I had no idea where he had gone, leaving the office and clients in limbo. It was discovered he had gone to Las Vegas and Florida with Exler to meet up with his new "clients" for what we now know was nefarious purposes. I cannot express the turmoil I felt our office was in everyday. I stayed simply because I cared about our clients. TJ's grandfather would come in nearly daily to see and talk about what was happening in TJ's case. The truth was, TJ's case was not Robin's priority. Robin had not been right since Covid in November of 2020.

18. Robin was a no-show for many of his client appointments. He would not return client phone calls. He lost client's court cases. He was spending most of his time with his "new" clients claiming he was defending some very important people. Towards the end of 2022, many of these clients began to call the office and leave threatening messages on our office phones. Some would come into the office and demand to see Robin. It was obvious, this was not just Robin doing his job as a defense attorney.

19. On one occasion during this time, Ms. Exler arrived at our office just as I was leaving to go home. Robin said she had just been released from rehab

and had been ordered by the Madison County Court to return to jail to serve the remainder of her sentence. She was found on his office floor as she had overdosed on fentanyl in his office. He called paramedics and used Narcan to save her life. Robin had allowed several drug clients to park their trailers in the field next to his home. Nothing was normal about this behavior.

20. Immediately following TJ's guilty verdict, Robin disappeared for days. When he finally came back to the office, he was severely depressed and seemed even more "off." As the Presentence Report was received by our office, Robin paid little attention to the report. TJ called and left messages for Robin letting him know TJ needed to know what was in the report and get a copy of the report. It is unclear whether TJ ever received a copy of the report before sentencing.

21. TJ asked about the appeal many times. Once TJ was sentenced and was sent to jail, Robin seemed to "check out" on TJ's case and the upcoming appeal. TJ was sent to federal prison . He called numerous times wanting to speak to Robin about the status of his case. I begged Robin to communicate with TJ, but I could not get Robin to call him back. TJ wrote letters to Robin, they went unanswered. TJ and his case were neglected.

22. Mr. Boam received a 45 year sentence in this matter. I am writing this declaration to state some of what I witnessed in the lack of competent

legal representation Mr. Boam received from Mr. Dunn in the Federal trial and in the Appeal.

**I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO THE LAW OF THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.**

DATED this 5th day of March 2025.

Evy Jo Gilstrap