JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ACTING UNITED STATES ATTORNEY
JUSTIN K. PASKETT, IDAHO STATE BAR NO. 9066
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
801 E. SHERMAN AVE SUITE 192
POCATELLO, ID 83201
TELEPHONE: (208) 478-4166
FACSIMILE: (208) 478-4175

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>TEL JAMES BOAM,<br><br>  Defendant. | Case No. 4:24-cv-00338-BLW-1<br><br>**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT** |

The United States of America, by and through Justin Whatcott, Acting United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, hereby opposes Petitioner's motion for relief under 28 U.S.C. § 2255. The motion should be dismissed because Petitioner has failed to meet his burden under *Strickland v. Washington* in demonstrating ineffective assistance of counsel. His allegations are unsupported by the case records, which conclusively show that he is not entitled to relief under 28 U.S.C. § 2255 and that an evidentiary hearing is unwarranted. *U.S. v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003).

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 1**

# BACKGROUND

## A. Underlying Criminal Conduct

In 2019, Petitioner's wife discovered numerous sexually explicit videos of her 14-year-old daughter (TA) on Petitioner's phone. Petitioner's wife confronted him, and he called it a mistake while accusing her of overreacting. She promptly informed law enforcement. Search warrants on Petitioner's phone and iCloud account revealed 36 videos of TA completely nude before, during, and after showering. Records showed that Petitioner used his Amazon account and credit card to buy the hidden camera used for surreptitious recording. TA did not know about the camera in the bathroom or the recordings. She disclosed that Petitioner directed her to shower in the master bedroom bathroom rather than others with showers. Although household members often used that bathroom, Petitioner's iCloud only retained the nude videos of TA. During three forensic interviews, TA disclosed that Petitioner sexually abused her twice after producing the videos.

## B. State Charges, Federal Indictment and Trial Proceedings

In October 2019, the State of Idaho charged Petitioner Tel James Boam with video voyeurism for recording sexually explicit videos of TA. He retained Penelope North-Shaul as counsel. After TA disclosed multiple sexual abuse instances, federal and state prosecutors coordinated in January 2020. Petitioner signed a binding state plea agreement to plead guilty to lewd and lascivious conduct (fixed term of at least 5 years, indeterminate term of at least 15 years) in exchange for no federal charges on child pornography production.

On January 27, 2020, he pleaded guilty in state court. While awaiting sentencing in state court Petitioner fired North-Shaul, retained Kristopher Meek and Dan Dummar, and moved to withdraw his plea on March 18, 2020, despite warnings of a federal indictment. In July 2020, he

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 2**

declared in writing full advisement of withdrawal consequences. On July 27, 2020, the state district court judge allowed withdrawal conditioned on federal charges for the production conduct.

On August 25, 2020, a federal grand jury indicted Petitioner on sixteen counts of child pornography production under 18 U.S.C. § 2251(a) and one count of possession under 18 U.S.C. § 2252A(a)(5)(B). Petitioner fired Meek and Dummar and retained Robin Dunn for the federal case (with Manuel Murdock later appointed as co-counsel). In August 2021, he declined a federal plea offer to plead guilty to one production count (remaining counts dismissed), which included a cover letter from the U.S. Attorney's office that advised of up to 500 years if convicted at trial. He proceeded to trial. The jury convicted him on all counts, and the district court sentenced him to forty-five years' imprisonment.

## C. Direct Appeal

Petitioner appealed, challenging the sufficiency of the evidence. He contended that (i) he did not attempt to employ, use, persuade, induce, or entice TA in a manner that violates § 2251(a); and (ii) that the videos of TA did not depict "sexually explicit conduct" under §§ 2251(a) or 2252A(a)(5)(b) because the videos did not contain lascivious exhibitions of TA's genitals or pubic area. The Court of Appeals rejected these claims and upheld the conviction.

## D. Petitioner's § 2255 Motion, Legal Brief in Support of Motion to Vacate or Set Aside Judgment, and Supplemental Memorandum in Support of Motion to Vacate or Set Aside Judgment

Petitioner claims that Mr. Dunn's alleged deficiencies constitute ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner's numerous assertions independently and collectively fall short of the *Strickland* standard. For purposes of responding

efficiently the Government has summarized Defendant's allegations from both motions as follows:

1. Mr. Dunn advised Petitioner to withdraw from the state plea and reject the federal plea without advising Petitioner of the risks or the federal guidelines.

2. Mr. Dunn was impaired by possible drug use, affecting preparation and performance.

3. Mr. Dunn failed to timely/properly disclose witnesses, experts, and exhibits.

4. Mr. Dunn failed to retain or call qualified experts.

5. Mr. Dunn failed to resubmit for polygraph admission to rebut 404(b) allegations.

6. Mr. Dunn lacked a logical trial strategy and adequate preparation, including evidence review.

7. Mr. Dunn failed to effectively cross-examine the victim and other witnesses.

8. Mr. Dunn called irrelevant and unqualified witnesses.

9. Mr. Dunn failed to object to lay testimony on expert matters.

10. Mr. Dunn alienated jury with bizarre closing arguments.

11. Mr. Dunn failed to review the Pre-Sentence Investigation Report (PSI) with the Petitioner.

## LEGAL STANDARDS

### A. General Standards for § 2255 Petitions

For a hearing to occur on a § 2255 motion, the petitioner must allege facts that, if true, would entitle him to relief. *Rodrigues*, 347 F.3d at 824. "Simply alleg[ing] 'conflict' or baldly assert[ing] that the conflict had an 'adverse effect'" is insufficient to establish ineffective assistance of counsel. *Id.* (internal quotations omitted). An evidentiary hearing is typically appropriate when "the moving papers are sufficiently definite, specific, detailed, and non-

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 4**

conjectural" to enable the court to conclude that contested issues of fact are genuinely at issue. *United States v. Ayers*, 924 F.2d 1468, 1481 (9th Cir. 1991). Conversely, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *See* § 2255 Rule 4(b).

If the court does not dismiss the motion, it must then determine whether an evidentiary hearing is necessary. *See* § 2255 Rule 8. A district court must grant an evidentiary hearing only if a factual dispute exists and the petitioner's version, if true, would warrant relief. *United States v. Chacon-Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000). The district court may deny a § 2255 motion without a hearing if the allegations are "palpably incredible or patently frivolous," such as "simply alleg[ing] 'conflict' or baldly assert[ing] that the conflict had an 'adverse effect'," or if the court can conclusively decide the issues from the evidence in the record. *Rodrigues*, 347 F.3d at 824; *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989). *See Blackledge v. Allison*, 431 U.S. 63, 67 (1977); *see also United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003).

### B. Ineffective Assistance of Counsel.

To prevail on a claim of ineffective assistance of counsel, Petitioner must show 1) that his counsel's conduct fell below a standard of objective reasonableness, and 2) that counsel's incompetence prejudiced him. *Strickland v. Washington*, 466 U. S. 668, 687-88 (1984); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). In evaluating an ineffective assistance of counsel claim, the court may consider the performance and prejudice components in either order. *Strickland*, 466 U.S. at 697. The court need not consider one component if there is an insufficient showing of the other. *Id*. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 690.

The first prong of the *Strickland* test sets a "highly demanding" standard that requires the petitioner to prove that his attorney's performance amounted to "gross incompetence." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). There is a "wide range of reasonable professional assistance," and a "strong presumption" that counsel's conduct fell within that range. *Strickland*, 466 U.S. at 689. "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998). When judging counsel's conduct, the issue is not what might have been possible, or even what might have been "prudent or appropriate," only "what is constitutionally compelled." *Burger v. Kemp*, 483 U.S. 776, 794 (1987). Strategic decisions "are virtually unchallengeable" if made after considerations of law and fact. *Strickland*, 466 U.S. at 690. The court applies such high deference to counsel's strategic choices because it is "too tempting for a Petitioner to second-guess counsel's assistance after conviction or adverse sentence," and the court must "eliminate the distorting effects of hindsight." *Id*.

Under the second *Strickland* prong a Petitioner must show actual prejudice from counsel's substandard performance. *Strickland*, 466 U.S. at 694. Thus, even if his counsel was grossly incompetent, the petitioner must still "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings *would* have been different." *Id*. (emphasis added). "[A]n attorney's inadequate representation does not rise to the level of a constitutional violation unless the deficiency so infected the adversarial process as to raise

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 6**

doubts about the reliability of the proceeding's outcome." *Howard v. Clark*, 608 F.3d 563, 568 (9th Cir. 2010) (citing *Strickland*, 466 U.S. at 687). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

ARGUMENT

**1.**          **Petitioner Knowingly and Voluntarily Withdrew from a Plea Agreement and Rejected a Separate Plea Agreement Because He Wanted to Claim Innocence**

**A. Strickland Prong One: Counsel's Performance Was Not Deficient**

Petitioner's first counsel, Penelope North-Shaul, negotiated a plea agreement on the State level for Petitioner. She "advised [Petitioner] to accept the plea agreement offered . . . . to avoid separate prosecutions." (Affidavit of Penelope North-Shaul at 2 ¶ 2(a)). She also advised him that "the likelihood of conviction was high based on [the] evidence," and that "his defenses were not credible and would likely not sway a jury in his favor at trial." (*Id.* at 2 ¶ 2(d)(i)). She warned Petitioner of the "mandatory minimum periods that would apply upon conviction in federal court." *Id.* She also warned him about "the consequences that would occur should there be any deviation from the terms of the plea agreement." *Id.* at 3 ¶ 3(a).

Petitioner terminated Penelope North-Shaul and hired Dan Dummar and Kris Meek as counsels. Both Dan Dummar and Kris Meek advised Petitioner that he should accept the plea offer because "his version of the events would not likely be believed by a jury," and they explained the federal sentencing guidelines to Petitioner "particularly as they relate to child exploitation crimes, to underscore the severity of potential federal consequences." (Declaration of Dan Dummar at 2 ¶¶ 3, 4(b); Declaration of Kristopher D. Meek at 2 ¶¶ 3, 4(b)). Despite these warnings, Petitioner terminated counsels and withdrew his plea agreement from the State case. In his Memorandum of Understanding and Consent to Withdraw Guilty Plea and Waive Right to a

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 7**

Speedy Trial, Petitioner declared that upon withdrawing from his plea agreement and terminating counsels that they "explained to [him] the implications of withdrawing [his] guilty plea" (¶ 2); he understood the risks associated with withdrawing his guilty plea (¶ 3); he understood the mandatory minimum prison sentence and that it was a realistic possibility that he would serve that prison sentence (¶¶ 4, 5); and that "nothing has been promised to [him] by [his] attorneys *or anyone else* to withdraw [his] plea." (¶ 7) (emphasis added).

In his withdrawal, Petitioner states, "I have been fully advised by my attorneys of the consequences that may result from the withdrawal of my guilty plea, and I am taking this action without duress and of my own free will and choice." (ECF 13-7 at 1 ¶ 4). Mr. Dunn could not have rendered ineffective assistance because he was not yet retained. Dan Dummar and Kris Meeks were Petitioner's retained counsels when he decided to withdraw. Mr. Dunn's alleged promises that Petitioner would win at trial if he withdrew from the plea agreement were not promises given by Petitioner's counsel and should not be considered when assessing Mr. Dunn's effectiveness while acting as Petitioner's counsel.

Petitioner claims that he "was not sufficiently informed to be able to make reasonable competent decisions including the pros and cons of the offered plea agreement" concerning the offered Federal plea agreement. (ECF 219 at 12). He also claims that Mr. Dunn did not advise him "of the sentencing guidelines, the point system, adjustments available, nor what his sentence could be imposed by the Court should he reject the offer and proceed to trial." (*Id.* at 13). These claims fail because he was adequately informed by Manuel Murdoch, co-counsel at the time.

Manuel Murdoch stated that he "review[ed] or discuss[ed] with [Petitioner] the Government's August 24, 2021 plea offer, including the Guideline calculation (180-210 months)

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 8**

and the possibility of up to 500 years if convicted at trial." (Affidavit of Manuel Murdoch at 3 ¶ 8) (See also Gov. Ex. 10 i.e. Rule 11 Plea Agreement). Mr. Murdoch explained to Petitioner that

> he should take the offer seriously because the risks as stated in the [plea offer] were real and accurate. I communicated to him that in my opinion, he was taking a huge risk by going to trial on the facts of the case and I did not believe that he had a compelling defense to present at trial.

*Id.*

Petitioner was aware of the risk he was taking when he withdrew from the State plea agreement against the advice of three of his counsels and went to trial against the advice of four of his counsels. He had every opportunity to take a plea deal, and he voluntarily and knowingly made the conscious decision to go to trial. Petitioner's claims that he was not able to make an informed decision is a blatant lie that contradicts his own statements and the declarations of four of his retained counsels.

### B.    Strickland Prong Two: No Prejudice from Plea Advice

Petitioner fails to show that he was prejudiced by Mr. Dunn's alleged enthusiasm to go to trial.

Defendants have "the right to make an informed decision on whether to plead guilty or go to trial. *Martin v. Thomas*, 130 F. App'x 121, 123 (9th Cir. 2005).

The case at hand is similar to *United States v. Arciero*, 835 F. App'x 196, (9th Cir. 2020). That Court ruled that a defendant who rejected a plea deal and retained a new attorney with the purpose of going to trial failed on her ineffective assistance of counsel claim.

> After rejecting the first plea agreement and discharging her prior counsel, [the defendant] retained [Defense Counsel] to go to trial. No plea agreement was available when the two corresponded . . . and [the defendant] subsequently rejected the plea agreement the government offered . . . . [The defendant] was not prejudiced by [Defense Counsel's] counsel because she desired to go to trial and decided to reject the then-available plea agreements.

*Id.* at 198-99.

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 9**

Petitioner claimed innocence and wanted to go to trial, despite four attorneys warning him that his theory was unbelievable, that it would be very likely that a jury would find him guilty, and that his sentence would be much longer if he went to trial instead of taking the plea deal.

Petitioner also claims that Mr. Dunn told him that the 404(b) evidence "could not be used by the government as it was far too prejudicial." (ECF 219 at 13 ¶ 13). This is nothing more than overstated optimism on Mr. Dunn's part. Notwithstanding, Petitioner would have wanted to go to trial even if Mr. Dunn had not said that. However, the Court ruled on the admissibility of the Government's evidence in advance of trial and Petitioner still elected to go to trial. Petitioner knew what evidence was allowed into trial and what evidence was not allowed into trial. (See ECF 92 (sealed), ECF 96 (sealed), and ECF 106). Despite knowing that the polygraph evidence, Carrie Wright's testimony, and much of his other evidence would not be allowed at trial, he still elected to move forward and proceed to trial rather than accept a plea agreement.

Even at sentencing, Petitioner refused to acknowledge his wrongdoing. He stated that the jury "got this one wrong." (Sentencing Transcript at 49:19). Judge Winmill noted that Petitioner showed "a lack of remorse." (*Id.* at 58:13). Even if—arguendo—Mr. Dunn was unreasonable, had a reasonable attorney given Petitioner the opportunity to go to trial, he would have taken the opportunity and still been found guilty. This was made evident when Petitioner terminated Ms. North-Shaul, Kris Meek, Dan Dummar, and disregarded Manuel Mudoch's advice. Petitioner was given all the information required when deciding whether to plead guilty or take his chances at trial. It would be unjust to allow Petitioner another chance merely because things did not go as he wished they would have.

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 10**

**2.       Allegations of Drug Use Are Speculative and Unsubstantiated**

**A.  Strickland Prong One: Counsel's Performance Was Not Deficient**

Petitioner speculates that Mr. Dunn was using illegal substances, impairing his ability to provide effective assistance at trial and ultimately prejudicing Petitioner.

Mr. Dunn is entitled to the "strong presumption" that his conduct was reasonable. *Strickland*, 466 U.S. at 689. Conclusory statements are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). If a "movant's allegations, when viewed against the record, . . . are so palpably incredible or patently frivolous," the motion should be denied without an evidentiary hearing. *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984).

Although Petitioner speculates that Mr. Dunn might have been taking or distributing illegal substances while assisting Petitioner (ECF 219 at 4), this is nothing more than a bare conclusion. Court records indicate that Mr. Dunn's illegal drug-related activities occurred between June 2022 and February 2023[1]. This Court filed Petitioner's Criminal Judgment in December 2021, well before Mr. Dunn engaged in the drug distribution.

Petitioner attempts to strengthen his claim by stating that Mr. Dunn was using Lorazepam, and that "the side effects of Lorazepam include drowsiness, mood changes, agitated or talkative behavior, depression, thinking problems, confusion, and hallucinations." (ECF 219-1 at 3 ¶ 10). Petitioner also "wondered if [Mr. Dunn] was taking more than prescribed." (*Id.* at 3 ¶ 8). These allegations are meritless. Petitioner fails to show that Mr. Dunn was not prescribed Lorazepam by his medical provider nor taking the prescribed dosage. Furthermore, the trial

---

[1] https://www.justice.gov/usao-id/pr/eastern-idaho-attorney-sentenced-42-months-federal-prison-drug-trafficking-conspiracy

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 11**

record does not show that Mr. Dunn exhibited any of the alleged side effects. Petitioner's claim that Mr. Dunn used controlled substances during trial fails to meet the burden required to overcome the presumption that Mr. Dunn was objectively reasonable.

### 3. Witness and Exhibit Disclosures Were Strategically Handled

#### A. Strickland Prong One: Counsel's Performance Was Not Deficient

Although Mr. Dunn did make attempts to disclose Carrie Wright's expert testimony past the deadline, the Court ultimately excluded her testimony on different grounds. Mr. Dunn initially submitted a timely disclosure, but the Court ruled that Carrie Wright's expert testimony was inadmissible based on Federal Rule of Evidence 702 and 704. (ECF 96 at 8-11).

During trial Mr. Dunn, in an untimely manner, motioned twice more to introduce Carrie Wright. The second motion was denied on grounds separate from—but in addition to—untimeliness; the Court found that Carrie Wright's opinions about the forensic interviews would violate the Federal Rules of Criminal Procedure and "invade the province of the jury." (Dkt. 5-7 at 18:4-5). Soon after, Mr. Dunn filed a third motion which was denied for "serious shortcomings beyond the failure to disclose the opinions and the basis for the opinions." (Dkt. 5-8 at 27:18-19).

The Court stated that it would have admitted Carrie Wright's "opinion about failure to follow protocols in a forensic interview" (*Id.*) had it been timely disclosed. However, her opinion about the procedural aspect of the forensic interviews was not part of Mr. Dunn's initial strategy. (See ECF 64 at 1). Only after having his motion denied did he employ this strategy. Mr. Dunn was objectively reasonable when he decided to change strategies after having two motions denied.

Petitioner's claim that Mr. Dunn might have successfully admitted Carrie Wright's testimony had he "taken steps to alert the Court to the fact that Mr. Boam's expert testimony […]

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 12**

was necessary for him to counter the Government's allegations" (ECF 218-1 at 3 n. 1) is misplaced because Mr. Dunn did exactly that. The Court knew that Carrie Wright's expected testimony assessed "the credibility of [Petitioner's] actions and therapy as it relates to the pleadings of specific intent and general knowledge of [Petitioner]." (ECF 64 at 1).

Petitioner is employing the benefit of hindsight to assert that Carrie Wright might have been admitted had Mr. Dunn taken a different approach. However unsuccessful, the approach that Mr. Dunn took was an objectively reasonable one. Petitioner's claim that Mr. Dunn should have "put in the requisite effort to use his expert witnesses and his exhibits as rebuttal to the Government's 404(b) allegations" (ECF 218-1 at 3 n.1) is a critique of Mr. Dunn's strategy rather than evidence that his performance was objectively unreasonable.

Ms. Gilstrap claims that she tried to keep Mr. Dunn up to date on his deadlines, but he did not show concern because he believed that he would be given deadline extensions due to the court allowing the prosecution numerous deadline extensions. (ECF 219-2 at 4 ¶ 9). Although unprofessional and unsuccessful, it is still objectively reasonable for Mr. Dunn to expect an extension deadline from the court when the court had previously granted the Government numerous extensions.

Ultimately, "[t]he district court acted within its discretion when it excluded this expert testimony." (Appeal Dkt. 42 at 7). Although Petitioner blames Mr. Dunn for Carrie Wright's exclusion, Mr. Dunn made objectively reasonable efforts to include her in trial. For these reasons, Petitioner fails to show that Mr. Dunn's counsel was deficient under the Sixth Amendment.

### B. Strickland Prong Two: No Prejudice from Disclosure Issues

Petitioner fails to show that "but-for" Mr. Dunn failing to introduce Carrie Wright that the judgment's outcome would have been different. Even if Mr. Dunn had successfully admitted Carrie Wright's testimony, she would not have been allowed to "state an opinion about whether [Petitioner] did or did not have a particular mental state or condition regarding the alleged conduct at issue in this case, nor may Ms. Wright state an opinion regarding [Petitioner's] truthfulness." (ECF 96 at 11). Without being able to testify to Petitioner's truthfulness or mental state, it is not reasonably probable that Petitioner's outcome would have been any different.

Carrie Wright also expected to testify to the jury about TA's alleged untruthfulness in the forensic interviews. (ECF 119 at 3). Even if she had testified to this at trial, there is not any indication that the jury would have acquitted Petitioner on any of the counts due to this testimony. Petitioner only asserts that it "would have cast severe doubt on the 404(b) rape allegations." (ECF 218-1 at 3).

Mr. Dunn thoroughly presented Petitioner's case to the jury and the jury still did not believe Petitioner. Mr. Dunn attempted to call into question TA's truthfulness when he asked her if she was under oath during the interview, which she was not. (Dkt. 5-7 at 67:5-11). He asked her if she had stated during the first forensic interview that Petitioner had never done anything "to [her] body that [she] didn't like." (*Id.* at 79:15-19). She responded that she said that because she "hadn't remembered anything at that time." *Id.* He asked her if she said, "I want to say that it has happened multiple times, but I don't remember any of it." (*Id.* at 80:7-8). Mr. Dunn also told the jury that Petitioner was not being charged with rape and that TA did not make any disclosures about the rape in the first two forensic interviews. (Dkt. 5-8 at 138:6-10).

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 14**

These questions and statements are all evidences that Mr. Dunn was objectively reasonable in his efforts to cast doubt on the 404(b) rape allegations. Aside from the 404(b) evidence, Petitioner still had to overcome the overwhelming evidence which included 30 videos/images on his personal phone of TA in the bathroom; Scott's sworn testimony that upon confrontation about the videos/images, "[Petitioner] told me that it was a mistake . . . that I was making a big deal of it." (Dkt. 5-6 at 164:16-17); Scott's testimony that upon asking if Petitioner had more, he stated, "Well, yeah" and tried convincing her that she had helped him delete similar videos/images in the past. (*Id.* at 164:19-24).

Furthermore, Carrie Wright's testimony would not explain why Petitioner asserted on the stand that he did not go swimming with TA at the hotel pool, and that he could not have done so even if he wanted to because it was locked. (Dkt. 5-7:14-19). This was disproven when it was revealed that he texted to TA "Pool close at 10. Got the maintenance guy to let me in," and "Stuck the door open for you…. Come on." (*Id.* at 167:6-7). It was not due to any unreasonableness on Mr. Dunn's part that Petitioner was found—in a dramatic and obvious way—to be lying in his attempt to discredit TA.

**4.       Decisions on Experts Were Strategic, Not Deficient**

### A.  Strickland Prong One: Counsel's Performance Was Not Deficient

A strategic decision not to pursue testimony by an expert is not automatically unreasonable. *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999). Although a better lawyer might have called an expert witness, that is not the standard to which *Strickland* holds Mr. Dunn. (*See Calderon*, 150 F.3d at 1113).

Although his strategy did not include pursuing a memory recovery expert witness, it did include advancing the theory to the jury that i) Petitioner bought an installed the hidden camera

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 15**

to catch someone stealing prescription drugs (Dkt. 5-6 at 183:2-20); ii) that he was unaware of the images/videos (Dkt. 5-7 at 138:7-25); and iii) the entire household had access to the phone where the images/videos were found (Dkt. 5-6 at 134:11-21). Although the strategy was unsuccessful and Petitioner was not believed by the jury (as Petitioner was warned of by four attorneys), failing to overcome the "overwhelming weight of the evidence" against him, (Sentencing Transcript at 52:19-20), it was nonetheless a reasonable strategy. His strategy's lack of success does not negate its existence nor make it unreasonable.

Petitioner here is essentially complaining with the benefit of hindsight that Mr. Dunn should have chosen a different strategy when deciding which expert witnesses and what evidence to admit. However, Mr. Dunn was objectively reasonable when he decided not to introduce a memory recovery expert witness.

### B. Strickland Prong Two: No Prejudice from Expert Choices

Petitioner's claim that if Mr. Dunn had called an expert witness to testify against TA's long term memory recovery "the 404(b) evidence would not have been admitted" (ECF 219 at 27) fails because it is conclusory and because the jury did not convict Petitioner on the 404(b) accusations. A defense counsel's failure to call an expert witness does not automatically amount to prejudice, especially if the defense counsel extensively cross-examines the prosecution's witnesses. *Clark*, 608 F.3d at 574.

Mr. Dunn's choice to not call an expert witness did not prejudice Petitioner. Mr. Dunn filed a motion to exclude the 404(b) evidence. Because the motion was denied, he resorted to an extensive cross-examination of TA about the 404(b) evidence in an attempt to impeach her and challenge the Government's evidence. Moreover, even if Mr. Dunn did successfully call to the stand a memory recovery expert witness, there is not a reasonable probability that the Court

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 16**

would have excluded the 404(b) evidence. Even if it would have resulted in the Court excluding the 404(b) evidence, there is not a reasonable probability that the exclusion would have changed the outcome of the judgment.

Contrary to Petitioner's beliefs, the Government's case was founded on much more than the 404(b) evidence: it included the fact that Petitioner's phone had over 30 videos—taken from a surreptitiously placed camera—of a nude TA inside and outside of a shower where Petitioner demanded that she bathe. Moreover, Dr. Davis's testimony would not have negated Petitioner's sworn testimony that he did not go into the hotel pool with TA because the door was locked, when later his own text messages to TA were read, stating that he "Stuck the door open for you" so that they could swim together at the hotel pool. (Dkt. 5-7 at 167:12-14). This alone is overwhelming evidence that would still have been admitted whether or not Mr. Dunn included a memory recovery expert witness. This Court stated that that he did not "think there was any dispute that [Petitioner] was the one who actually installed that [the spy camera] and also installed the app which allowed images to be taken of people in the shower." (Sentencing Transcript at 52:11-14).

Petitioner fails to show that if Mr. Dunn had included a memory recovery expert witness that the judgment would have been any different, even if it might have "had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. This was not a close case that the Government stole from Petitioner.

**5.      Polygraph Efforts Were Reasonable**

**Relitigation**

Petitioner argues that Mr. Dunn was unreasonable by declining to argue that the polygraph evidence could not have prejudiced the jury because it was primarily introduced to

combat the 404(b) allegations. (ECF 218 at 8 n.3). This claim is not only false, but it should be barred because it is nothing more than an attempt to relitigate the polygraph evidence issue.

"[F]ederal prisoners may not use a motion under 28 U.S.C. §2255 to relitigate a claim that was previously rejected on direct appeal." *Foster v. Chatman*, 578 U.S. 488, 519 (2016). "It is well-settled that in order for res judicata to bar litigation, the following requirements must be met: (1) the same claim or cause of action arising out of the same facts must be involved in both suits; (2) there must be a final judgment on the merits in the prior action; and (3) the parties in the instant action must be the same as or in privity with the parties in the prior action in question." *Coeur D'Alene Tribe v. Asarco Inc.*, 280 F. Supp. 2d 1094, 1118 (D. Idaho 2003) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-27 n. 5 (1979)). Furthermore, "[t]he law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Askins v. United States Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018).

Petitioner's claim that "but-for" Dunn's argument the polygraph would have been admitted fails to address the substantive decision made by the trial court and upheld by the Ninth Circuit. *Res judicata* bars this claim because (1) Petitioner's claim now is the same as when Mr. Dunn argued it, (2) the District Court and Court of Appeals has already ruled on it, (3) the parties are the same. Moreover, the law of the case doctrine bars the claim because the District Court and the Appellate Court have already ruled on this issue, and their rulings should continue to govern.

Petitioner here is essentially using his § 2255 motion as a platform to readdress an issue that has already been decided. He even titles one section "Improper Admission of 404(b)

Evidence." (ECF 219 at 26). The matter of the admissibility of the polygraph evidence has already been decided, appealed, and decided again. Accordingly, this claim should be barred.

### A. Strickland Prong One: Counsel's Performance Was Not Deficient

Should the Court review the claim, the Government maintains its stance that Mr. Dunn was objectively reasonable. In contrast to Petitioner's claim, Mr. Dunn stated to the Court that the "polygraph results refute any of the alleged wrongful conduct, bad acts or criminal conduct alleged by the Government." (ECF 54-1 at 3-4) (internal quotations omitted). This shows that Mr. Dunn explained to the Court that he wanted to include the polygraph evidence to combat the 404(b) allegations. The Appellate Court acknowledged Mr. Dunn's attempt to use the polygraph evidence to combat the 404(b) evidence: "[Petitioner] argues that the district court abused its discretion in excluding his successful polygraph results concerning *both* the charged offenses and the Rule 404(b) evidence." (Appeal Dkt. 42 at 8) (emphasis added). Petitioner now is merely complaining that Mr. Dunn did not more thoroughly explain this losing argument to the Court.

Furthermore, Petitioner disregards Mr. Dunn's reasonable efforts to admit the polygraph evidence, and he claims that Mr. Dunn should have pursued a different avenue to admit the evidence. Maybe Petitioner's current defense counsel—with the benefit of hindsight—would have pursued a different avenue than Mr. Dunn to admit the evidence. However, Mr. Dunn is not expected to take the course of action that even the best lawyer would take; he is only expected to be reasonable, which he was when he pursued his own strategy in admitting the evidence.

The "weakness of the omitted [evidence] when compared to the overwhelming evidence presented to the jury" (*Hernandez v. Chappell*, 923 F.3d 544, 557 (9th Cir. 2019)) is not due to Mr. Dunn's performance, it is due to the weakness of Petitioner's case.

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 19**

### B. Strickland Prong Two: No Prejudice

Petitioner has not and cannot show that the exclusion of the polygraph evidence changed the judgment's outcome. On its merits and aside from untimely disclosure, the Court denied admission of the polygraph evidence because "the probative value of the polygraph evidence [was] substantially outweighed by the danger of unfairly prejudicing the jury." (ECF 89 at 15) (sealed). The Appellate Court affirmed this decision. (Appeal Dkt. 42 at 8). In other words, even if it had been timely disclosed, the Court still would denied it.

Petitioner does not even claim that inclusion of the polygraph evidence would have changed the judgment's outcome. He merely claims that there "was a potential that compliance may have resulted in the admission of portions of the polygraph results which supported his denial of some or all the allegations against him." (ECF 219 at 28). Having support of his denial does not create a reasonable probability that the judgment would have been different.

### 6. Trial Strategy and Preparation Were Reasonable

### A. Strickland Prong One: Counsel's Performance Was Not Deficient

Mr. Dunn's motions and appeal briefs show that he thoroughly considered the applicable laws and facts of the case. (*See* Appeal Dkt. 4 at 53-55). He attempted numerous times to admit expert witnesses and polygraph evidence, even appealing the issues. Although hindsight reveals that his strategies were ultimately unsuccessful, it was still his "virtually unchallengeable" strategic decision to employ that strategy after considering the laws and the facts of the case.

Mr. Dunn's strategy included calling witnesses to the stand and cross examining the Government's witnesses. For example, in an attempt to impeach TA's statements about the hotel incident, Mr. Dunn called a witness to the stand who testified that the hotel staff "restrict[s] everyone outside of certain times so they have no access in those areas [where the incident took

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 20**

place].” (Dkt. 5-7 at 197:7-8). Additionally, he showed the jury that household members had access to Petitioner's phone—the device which contained the child pornography. (Dkt. 5-6 at 140-41). Moreover, he brought up the fact that Petitioner's wife and Petitioner had discussed buying a camera together because they suspected that someone was stealing prescription drugs from the bathroom. (*Id.* at 183-84). Furthermore, he called Petitioner to the stand, allowing him to tell his side of the story. (Dkt. 5-7 at 114-59, 186-87).

Although Petitioner may believe that Mr. Dunn "presented poorly" at trial (ECF 219-1 at 5), that does not mean that his performance amounted to "gross incompetence." *Kimmelman*, 477 U.S. at 382. Petitioner admits that Mr. Dunn had a strategy when he complained that upon taking the stand, he "was too far in to take any other course of action other than the action proposed by Mr. Dunn." (ECF 219-1 at 5). Mr. Dunn's "course of action" (*Id.*) was objectively reasonable despite it not resulting with Petitioner's acquittal.

Petitioner fails to articulate how Mr. Dunn was unreasonable in trial preparations. Additionally, he does not point to an unreasonable question asked at trial nor to a question that was unreasonably omitted. He simply asserts that Mr. Dunn was unprepared, making his claim conclusory and meritless. The outcome of Mr. Dunn's trial strategy does not negate the fact that he had an objectively reasonable trial strategy.

### B. Strickland Prong Two: No Prejudice from Strategic Choices

Petitioner asserts that "Mr. Dunn's trial performance undermined any potential defense and assured conviction. The results of the trial would have been different had Mr. Dunn performed reasonably." (ECF 219 at 25). This claim is conclusory and meritless.

Petitioner claims that a strategy involving better timeliness "may have resulted in the admission of portions of the polygraph results which supported his denial of some or all the allegations against him." (ECF 219 at 28). He also claims that the 404(b) evidence would not have been admitted had Mr. Dunn presented relevant expert testimony. (*Id.* at 27). He points to The Declaration of Deborah Davis, Ph.D. i.e. "Attachment E" as "establish[ing] that fact." *Id.* At best, the declaration might have called into question TA's truthfulness, but nothing suggests it would have totally prevented the 404(b) evidence from being admitted. Furthermore, even if it did prevent the 404(b) evidence's admission, there is still no indication that Petitioner "would probably have won" *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) because of its exclusion. This one piece of evidence being excluded would not have reasonably changed the outcome of the judgment, especially considering that "the Government admitted several dozen exhibits into the trial record." (ECF 218 at 12).

**7.      Cross-Examinations Were Adequate and Strategic**

**A.  Strickland Prong One: Counsel's Performance Was Not Deficient**

The presumption that defense counsel was objectively reasonable holds "particular force where a petitioner bases his ineffective assistance claim solely on the trial record, creating a situation in which a court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (internal quotation omitted). Additionally, "suggestions regarding how defense counsel might have handled . . . crossexamination differently are insufficient to support an ineffective assistance of counsel claim. *Mancuso v. Olivarez*, 292 F.3d 939, 955 (9th Cir. 2002). An "opinion that the cross examination could have been more thorough does not constitute

ineffective assistance of counsel. *Hamry v. Beers*, No. 90-35656, 1991 U.S. App. LEXIS 10131, at *2 (9th Cir. May 13, 1991).

Petitioner relies on the trial record to support his claim that Mr. Dunn should have more thoroughly questioned Officer Johnson about the forensic interviews. Conversely, the trial record reflects that Mr. Dunn was reasonable and strategic in questioning Officer Johnson. Attempting to convince the jury that showering is not lascivious conduct, he asked Officer Johnson if TA was doing "normal hygienic activities" in the videos/images, and/or if she was doing anything sexual. (Dkt. 5-4 at 80:15-16). Mr. Dunn attempted to impeach the forensic interviews by asking Officer Johnson if it is procedurally "normal to continually have forensic interviews after the first one doesn't disclose any criminal activity." (*Id.* at 82:2-3). He also asked Officer Johnson, "And so if they [interviewees] have more time and distance [between interviews], you are saying that their memory improves?" (*Id.* at 82:12-13). These questions all show that Mr. Dunn had a trial strategy and that he was objectively reasonable in carrying out that strategy. Petitioner's frustration that the cross examination was not thorough enough falls short because Mr. Dunn was objectively reasonable in showing to the jury potential issues concerning the interviews' procedures.

On two occasions Mr. Dunn questioned TA. Those two occasions allowed him to thoroughly put forward Petitioner's theory that TA was not credible and that she was improperly influenced: After she said that she and Petitioner swam at the hotel between 11:00 PM and 12:00 PM, Mr. Dunn asked her "would it surprise you to know that the swimming pool and the hot tub close at 10:00 p.m. every single day?" (Dkt. 5-6 at 126:16-17); he asked her about the first forensic interview in which she "did not make any disclosures of any inappropriate conduct" with Petitioner (*Id.* at 130:25-131:1); he pointed out to the jury that TA was not under oath

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 23**

during the forensic interviews (Dkt. 5-7 at 67:5-11); and he asked TA if she ever made the following statement, "My mom once told me, 'Do you remember the time when [Petitioner] was on top of you?'" (*Id.* at 83:25-84:3). Mr. Dunn thoroughly examined and cross examined TA, putting forward Petitioner's theory that she was not credible and that she was unduly influenced.

The record shows that Mr. Dunn had numerous strategies, even if hindsight reveals that they were ultimately unsuccessful. Petitioner's claims that Mr. Dunn should have taken a different approach in questioning Officer Johnson and TA are nothing more than critiques and complaints fueled by the benefit of hindsight. Petitioner fails to overcome the presumption that Mr. Dunn had a reasonable strategy.

### B. Strickland Prong Two: No Prejudice from Cross Examination

Petitioner fails to show that a more thorough cross examination of Officer Johnson and TA concerning the forensic reviews would have changed the judgment's outcome.

Petitioner claims that Officer Johnson showing TA videos and images "undoubtedly impacted [TA's] state of mind, causing trauma, indignity and anger," and that the "second interview was tainted by Officer Johnson thereby leaving the results suspect." (ECF 219 at 17). However, Petitioner fails to explain how a more thorough cross examination by Mr. Dunn concerning the forensic evidence would have changed the result of the proceedings. He merely asserts his opinion that the interview was tainted. It is not reasonably probable that more thorough questioning would have overcome the overwhelming evidence against Petitioner, nor would it have overcame the fact that Petitioner was caught in a significant lie which was substantially material to the case.

**8.      Witness Choices Were Objectively Reasonable**

**A.  Strickland Prong One: Counsel's Performance Was Not Deficient**

Petitioner's claim that "[t]here appeared to be no purpose in calling Mr. Bonser" to the stand fails because Petitioner relies on the trial record to prove it unreasonable. Because Petitioner brings no outside evidence or statements as to why that was objectively unreasonable, it should be presumed a strategic, reasonable decision by Mr. Dunn. *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

**B.  Strickland Prong Two: No Prejudice from Witness Choices**

Petitioner fails to show how this affected the outcome of the judgment, failing to satisfy the second *Strickland* prong.

**9.      Failure to Object Was a Reasonable Tactical Decision**

**A.  Strickland Prong One: Counsel's Performance Was Not Deficient**

The decision not to object is strongly presumed to be a reasonable and strategic decision. *See Larimer v. Yates*, 483 Fed. App'x. 317, 319-20 (9th Cir. 2012).

Petitioner's hindsight critique of Mr. Dunn fails to account for his trial strategy. Mr. Dunn spent a substantial amount of time questioning TA about her memory, or lack thereof. Although the best lawyer might have objected to TA's testimony concerning Ambien, Mr. Dunn is not held to the standard of the best lawyer, he is only held to the standard of a reasonable lawyer.

Although hindsight may reveal that Mr. Dunn's strategy was "seemingly unusual or misguided" (*Yarborough*, 540 U.S. at 8), it should be presumed that Mr. Dunn "had a sound strategic motive" (*Id.*) because Petitioner relies on the trial record to prove his claim.

**B.  Strickland Prong Two: No Prejudice**

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 25**

Even assuming failure to object was unreasonable, Petitioner fails to show that "but-for" such failure the outcome would have been different. The overwhelming evidence against Petitioner, including the videos, financial records of camera purchase, and Petitioner's own contradictory testimony, would not have been overcome by objections to lay testimony on Ambien effects. Accordingly, Petitioner fails to show prejudice.

10.    **Closing Arguments Were Within Professional Norms**

   **A.  Strickland Prong One: Counsel's Performance Was Not Deficient**

Although Petitioner calls some of Mr. Dunn's arguments "bizarre" and says he did not know the "elementary rules" of trial (ECF 219 at 21-22), he is merely pointing out statements taken out of context. Mr. Dunn supported Petitioner's claim of innocence in the face of the Government's "overwhelming weight of . . . evidence." (Sentencing Transcript at 52:19-20). Because of the weakness of Petitioner's case, Mr. Dunn was forced to "grasp at straws" and make evidentiary arguments on "shaky grounds." Moreover, because Petitioner relies on the trial record about the "bizarreness" of Mr. Dunn's arguments, they should be presumed tactical and strategic decisions by Mr. Dunn, even if unsuccessful in the end. Mr. Dunn was objectively reasonable in choosing and presenting his strategies and arguments.

   **B.  Strickland Prong Two: No Prejudice from Closing Arguments**

Petitioner fails to show how he was prejudiced by Mr. Dunn's alleged negative impact on the jury. He does not show how a single member of the jury was impacted—to any degree—by Mr. Dunn's performance at trial. He only makes the conclusory claim that Mr. Dunn "obviously alienated the jury against [Petitioner]". (ECF 219 at 22). In reality, Petitioner was the one who alienated the jury when he was impeached by his own text messages, after having been caught in a significant lie.

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 26**

**11.** **Petitioner Informed the Court He Had Adequate Time to Review the PSR During the Recess**

"Solemn declarations in open court carry a strong presumption of verity." *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012) (internal quotation omitted).

Special Agent Rodel reported, upon monitoring Petitioner's jail calls, that Petitioner chose not to read the presentence report, despite its availability. (Sentencing Transcript at 10:7-13). Mr. Dunn claims to have "verbally told [Petitioner] many of the matters" even if he "did not have him read each and every page." (*Id.* at 7:1-3). Moreover, the Court was aware that Petitioner wanted extra time to go over the presentence report and denied that request. (*Id.* at 9:24-25, 10:14-15).

Petitioner claims that, in fear of angering the Court, he lied when he affirmed to the Court that he did review the report with Mr. Dunn. (ECF 219-1 at 5 ¶ 24). However, this is meritless because, under oath, he swore to the Court that he reviewed the report with Mr. Dunn. (Sentencing Transcript at 12:17-20). By attempting to take back his statement which now adversely affects him, Petitioner attempts to deceive the Court in hopes of a more favorable outcome.

## CONCLUSION

Petitioner's § 2255 motion fails both *Strickland* prongs. Case records refute his unsupported claims that Mr. Dunn's performance was deficient and prejudicial. Mr. Dunn did not handle the state plea withdrawal, and his federal plea advice aligned with co-counsel's warnings. Allegations of drug use lack evidence, and trial strategies—witness disclosures, expert choices, polygraph efforts, cross-examinations, witness selections, objections, and closing arguments—fell within reasonable professional norms despite the case's weakness. Petitioner's informed, calculated trial choice, against multiple counsels' advice, led to conviction under

**GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION TO VACATE OR SET ASIDE JUDGMENT - 27**

overwhelming evidence, including 36 videos, financial records, and his own contradictory testimony. His claims attempt to relitigate strategy and shift blame for his decision. The motion and records "conclusively show that the prisoner is entitled to no relief," warranting no hearing. 28 U.S.C. § 2255; *Earley v. United States*, at 715 (9th Cir. 1967). The Government requests denial and dismissal without a hearing.

RESPECTFULLY submitted this 4th day of August 2025.

JUSTIN WHATCOTT
Acting United States Attorney
By:


*/s/ Justin K. Paskett*
JUSTIN K. PASKETT
Assistant United States Attorney