STEPHEN S. HART
HART LAW OFFICES, P.C.
482 Constitution Way Suite 313
Idaho Falls, ID 83402-3537
Phone: (208) 524-3272
Fax: (208-524-3619
Idaho State Bar # 1987
Email: shart@hartlawif.com

Attorney for Defendant, Tel James Boam

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TEL JAMES BOAM,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No.4:24-cv-338-BLW<br>4:20-cr-00188-BLW-1<br><br>**SUPPLEMENTAL DECLARATION OF TEL JAMES BOAM IN SUPPORT OF HIS REPLY TO THE GOVERNMENT'S RESPONSE** |

I, TEL JAMES BOAM, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the petitioner in this matter. I am over the age of 18 and competent to testify to the statements contained herein. I would testify to these statements in open court.

2. I acknowledge that I received legal advice from three additional attorneys prior to Rob Dunn entering a formal appearance in the United States District Court in Case No. 4:24-cr-00338-BLW. However, Rob Dunn was giving me advice from the date of the initial filing of the criminal charges, on October 2, 2019, in the State of Idaho, County of Jefferson until he entered his appearance in this matter on August 28, 2020.

3. When the State of Idaho case was first filed, Rob Dunn informed me that he could not be my attorney "on paper" as he had a long trip planned to Europe with his wife

and a group of people and would be gone for over a month and he was doing work with the City of Rigby as a Prosecutor that could interfere with his ability to be my attorney of record.

4. Rob Dunn and I spoke constantly as the State criminal matter progressed. Rob Dunn is the person who referred me to Penny Shaul as she had previously worked with him in his office as Prosecuting Attorney for Jefferson County and as an attorney in his private practice. Rob Dunn specifically told me that he had a good relationship with Ms. Shaul and could work "behind the scenes" with Ms. Shaul on my matter. Rob Dunn specifically told me to keep him apprised of how the case was progressing. Rob Dunn would give me information and/or ideas to give to Ms. Shaul. Rob Dunn was not available for me to discuss whether or not I should sign the plea agreement that Ms. Shaul was stating to me that I had to sign immediately. I signed a plea agreement and it was filed with the Jefferson County court on January 21, 2020. Thereafter, when I told Rob Dunn I had signed the plea agreement and after Rob Dunn reviewed the plea agreement, Rob Dunn told me to have Ms. Shaul call him. Ms. Shaul told me she would not call Rob Dunn regarding my matter. After that, Rob Dunn then told me to fire Penny Shaul and hire Kristopher Meek and immediately move to have my plea agreement with-drawn.

5. Mr. Meek and Mr. Dummar made an appearance on my behalf in the State Court criminal matter on March 3, 2020 and on March 16, 2020, filed the motion to withdraw my plea.

6. Rob Dunn and I had the same communication arrangement after I hired Kristopher Meek and Dan Dummar. I talked with Rob Dunn about their advice and their

strategy. Rob Dunn would give me information to discuss with Kristopher Meek and Dan Dummar. Rob Dunn would advise me whether he thought their decisions were in my best interest and the best strategy for my case. Rob Dunn was very adamant that I needed to withdraw my guilty plea. I asked Kristopher Meek and Dan Dummar to call Rob Dunn about my matter but they declined to do so.

7. The Order allowing the withdrawal of my guilty plea was entered on July 28, 2020 and the State case was dismissed on August 27, 2020.

8. My last communication, in person with Mr. Dummar and Mr. Meek, as set forth in paragraph 5 of each of their Declarations (Dkt. 16-2 and 16-3) was confrontational as Robin Dunn told me the advice of Mr. Dummar and Mr. Meek was incorrect and that he could win my case and I should not plead guilty to anything.

9. The federal case was filed on August 25, 2020 and Rob Dunn entered his appearance as my attorney on August 28, 2020.

10. Rob Dunn convinced me that the other three attorneys' (Shaul, Dummar and Meek) analysis and advice of and for my case was incorrect and that he had far greater experience and knowledge regarding criminal cases. Rob Dunn assured me that he could win my case at trial if it went that far. Rob Dunn He treated me like a son, taking me shopping, to lunch, buying me gifts.

11. Rob Dunn had an excellent reputation as an attorney in Jefferson County. Mr. Dunn told me that other three attorneys were much younger and had far less experience than he did.

12. The letter of January 14, 2020 from the United States Attorney's Office (Attachment A) sent to Penny Shaul became one of the factors in my choice to withdraw my

state

plea. Robin Dunn reviewed the State plea offer and the government's offer and told me that he

could "beat the case" and that they were not good offers.

13. To my knowledge, Meek/Dummar didn't review the letter or contact the U.S. Attorney.

14. During Dunn's representation, he made the following statements/promises to me, in front of third parties at times, on numerous occasions:

a. He made continued representations of success to me even during the trial.
b. He made representations I could not be convicted on circumstantial evidence and circumstantial evidence was all that the government had to use against me.
c. He made continual representations that I could not be convicted of the charges against me as they did not fit the definition of the statute under which I was being charged. Mr. Dunn told me over and over that the videos only showed normal hygiene actions by T.A. and nothing sexual or sexually explicit.
d. Mr. Dunn represented to me and other third parties that his [Dunn's] brother was a "big wig" at Apple, who could and would counter the government's claims regarding the iCloud evidence that the government intended on using at trial. (*See Declaration of Hailey Boam, Dkt 219-3, p. 3, paragraph 18).*
e. Mr. Dunn assured me on many occasions that the requested 404(b)
f. evidence would never be admitted at the time of trial. Mr. Dunn never told me, and I
g. only learned at trial, that the 404(b) evidence was going to be admitted at trial per an order

h. issued by Judge Winmill. Mr. Dunn never showed me this order and never told me about

i. the order and its contents.

j. Mr. Dunn assured me that the two polygraph tests that I had taken,

k. and had passed, would be strong evidence I would be able to admit at the time of trial and

l. would be evidence that the jury would see. Because I passed both polygraphs confirming that I did not have any sexual contact of any kind with T.A. and that I had never viewed the videos of T.A. on my phone or the ICloud, Mr. Dunn assured me that this evidence would be fatal to the government's case.

15. In the months leading up to trial, Dunn's behavior changed noticeably during our meetings. He would often leave for an hour or more, returning in a "changed condition" appearing disheveled, unfocused, and erratic. Preparation time was minimal; instead, he would reminisce about his past prosecutorial successes rather than discuss strategy or evidence. This left me unprepared and confused about the case's direction.

16. Before trial, Dunn began acting strangely, indicating the government was tapping his phones and monitoring his email. (*See Declaration of Hailey Boam, Dkt 209-3, p. 4, paragraph 21*). His paranoia affected our communications, as he avoided discussing key details over the phone or email, further hindering preparation.

17. Dunn informed me that he was "an expert at getting around the rules", and had never lost a criminal case in Jefferson County.

18. As trial grew closer, I obviously was very scared and concerned about the

upcoming trial and continually tried to communicate with Mr. Dunn about it. I didn't understand how Mr. Dunn intended on addressing the government's evidence except with the polygraphs and Ms. Wright's testimony. When I would ask Mr. Dunn to explain the trial process to me, he would put me off by saying "don't worry about it, I have it under control"

19. As trial approached Mr. Dunn began behaving very strange and bizarre. He grew his hair

out very long, grew a long white beard and wore large sunglasses, stating to me that "no one would recognize him." I could never find him in the office, and was informed he was often out of town. Mr. Dunn began acting paranoid. He stated he thought he was being followed and bugged. He bragged that Aaron Wadsworth, one of his criminal clients, was his associate and was a "kingpin" and very important person. It was obvious to me he was referring to illegal drug involvement. He began bragging that he had just returned from California stating that the "big boys" had buried money in the desert he tried to locate.

20. I had given Mr. Dunn's office staff had evidence relating to past false allegations by my

ex-wife (mother of T.A.) which were directed at her prior husband before me. For some unexplainable reason, Rob Dunn did not follow up, disclose or use this information at trial. (*See Declaration of Evy Gilstrap, Dkt 219-2, p. 5, paragraph 18).*

21. Mr. Dunn never discussed the possibility or benefit of hiring a memory expert, though it is obvious that this was essential. The reason it was obvious was that Carrie Wright had reviewed the forensic interviews and advised Mr. Dunn of the obvious inconsistencies and flawed procedure employed over the three (3) interviews.

22. At trial, Dunn's missteps were evident and repeatedly corrected by the judge. For

example, the judge excluded several of my key witnesses and exhibits because Dunn had not timely disclosed them, despite the court's clear pretrial orders re-quiring disclosure at least 45 days before trial. The judge noted this failure multiple times, emphasizing that it prevented the government from preparing responses or challenges, such as *Daubert* motions for experts.

23. Dunn failed to properly disclose my expert Carrie Wright, and the judge excluded her testimony as a result. I learned during trial that her anticipated testimony on my counseling and denials was not admissible due to Dunn's untimely disclosure. Similarly, Dunn assured me his brother would testify as an Apple expert to counter the iCloud evidence, but he was never listed or called; ironically, the government produced an Apple witness, and I was not informed until mid-trial.

24. The judge also corrected Dunn on evidentiary issues, such as allowing government rebuttal exhibits without prior disclosure while excluding mine for the same reason. Dunn did not object effectively or argue for reciprocity, leaving my defense gutted.

25. Dunn lied to me about the nature of the evidence, stating all was circumstantial and insufficient for conviction, but at trial, the judge admitted it, and Dunn failed to counter it adequately. He also misrepresented federal law and conviction requirements under

18 U.S.C. §§ 2251-2252.

26. During trial, Dunn appeared under the influence at times-unfocused, slurring words, and making irrelevant objections that the judge overruled repeatedly. This impaired

his performance, as seen in his failure to cross-examine witnesses on inconsistencies, like T.A.'s recovered memories or Ambien effects.

27. Dunn did not adequately investigate facts pre-trial, such as retaining qualified iCloud experts or memory specialists. The government's experts went unchallenged. When co-counsel Manuel Murdock was appointed, Dunn told me privately that Murdock was "not on our side" and conspiring with the government, advising caution when around him. (*See Declaration of Hailey Boam, Dkt 209-3, p. 3, paragraph 15*). This created distrust and hindered collaboration.

28. Dunn promised to play forensic interviews to prove T.A.'s lack of credibility but never did.

29. I felt Mr. Dunn had alienated the jury by making ludicrous statements such as:

a. "If someone is raping or controlling you surely you are not the one on the bottom, you are the one on top".

b. The nude bathroom videos were simply normal simple acts of T.A. performing hygienic activities.

c. Nude photos of young girls "have a lot of art in them."

30. During recesses and breaks, Mr. Dunn began telling me and those persons at the trial supporting me that I was innocent and being railroaded. Dunn stated that I was 'not getting a fair trial.

31. Mr. Dunn stated to me and my supporters at the trial that the Judge and Prosecutor don't want my evidence to come in at trial.

32. I was never informed of federal sentencing guidelines, adjustments, enhancements,

or lack of early release/probation.

33. Dunn would not review the PSI with me before sentencing, calling it "full of junk." I called and wrote multiple times without response. (*See Declaration of Evy Jo Gilstrap, Dkt. 209-2, pages 3-8; Hailey Boam's Declaration, Dkt 209-3, pages 2-3*). At sentencing, the judge called a 32-minute recess for review, but it was insufficient for the 83-page document, and I had no prior opportunity to identify errors.

34. Prior to these charges, I had no significant contact with law enforcement or the court system. I was a farmer with limited education and several mental health issues.

35. Mr. Dunn was paid more than $200,000 for my representation.

36. I was diagnosed at age nineteen (19) with Attention Deficit Hyperactive Disorder. I have not been treated for this condition to date. I have suffered depression for a long period of time, and considered suicide. I now receive an anti-depressant, which helps, but does not significantly reduce the symptoms.

37. I was unaware until after trial, that I had additional mental issues which needed to be addressed. I did not see the Psychosexual Report from Blair Garner (*Dkt. 149-3, p. 9-11)* until after my trial and just minutes before my sentencing hearing began. The Psychosexual Report indicates the following potential mental issues:

a. I become disconnected from reality.

b. Borderline Psychotic Condition.

c. Somatoform Disorder.

d. Schizoid or Schizotypal Personality.

e. Bipolar Disorder (with Psychotic Features)

f. Generalized Anxiety Disorder

g. Alcohol Use Disorder

h. An unspecified personality disorder

i. Paranoid Personality Disorder

38. Dunn secretly requested letters, from people at the trial supporting me, criticizing and threatening the judge, lying to the court about it.

39. I did not understand Rule 404(b) or that extraneous evidence could be admitted; Dunn assured it would not.

40. If informed of risks, I would have pleaded guilty to avoid trial and a near-life sentence. Dunn coerced me with claims of never losing in Jefferson County and expertise in

"getting around rules."

41. Dunn did not keep me informed or communicate in good faith before, during, or after trial.

42. I was confused by conflicting advice; and when I would try to discuss the same with Dunn, he would dismiss my concerns angrily.

43. Dunn deceived me about plea offers and alternatives.

44. I passed two polygraphs, but Dunn did ensure their admission; the judge excluded them due to his failures.

45. Dunn would not retain experts to test iCloud evidence; his IT person was unqualified.

46. I was never informed memory experts existed or could help rebut recovered memory claims.

47. If I refused the plea and went to trial, I could die in prison. Dunn never

warned

me of this fact.

48. Dum's closing arguments were bizarre and alienating, full of irrelevant and incomprehensible statements that the judge had to interrupt.

49. These cumulative errors denied me effective counsel and a fair trial.

50. I am requesting that this court grant an evidentiary hearing on my pending petition for a new trial and /or order a new sentencing hearing.

51. These cumulative errors, even if individually insufficient, collectively prejudiced my defense and denied me a fair trial.

**I declare under penalty of perjury pursuant to the law of the State of Idaho that the foregoing is true and correct.**

Dated: November 3, 2025.

/s/ *Tel James Boam*

TEL JAMES BOAM
Petitioner

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2025, I served a copy of the foregoing document through CM/ECF on all registered participants to the action, as reflected in the NOTICE OF ELECTRONIC FILING registry, as noted in the official case registry, including:

**William M Humphries** United
States Attorney's office
bill.humphries@usdoj.gov

**Justin K Paskett**
United States Attorney's Office justin.paskett@usdoj.go_y

**John Christopher Shirts**
DOJ-USAO
john.shirts@usli.Oj...gOY

Dated: November 3, 2025.

STEPHEN S. HART, ESQ.
Attorney for Petitioner