UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TEL JAMES BOAM,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 4:24-cv-000338-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Tel James Boam's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. 1). Boam argues that he is entitled to relief because he received ineffective assistance from counsel at trial. Having reviewed the record, including the record in the underlying criminal case, the Court concludes that Boam is entitled to an evidentiary hearing pertaining to (1) federal plea negotiations, (2) counsel's failure to timely disclose the opinions of expert Carrie Wright, (3) counsel's failure to call an expert in recovered memories, and (4) the cross-examinations of T.A. and Officer Dustin Johnson.

## BACKGROUND

Mr. Boam was convicted of 16 counts of Attempted Sexual Abuse of Children and one count of Possession of Child Pornography following a jury trial

MEMORANDUM DECISION AND ORDER - 1

in September 2021. He received a total sentence of 45 years in prison followed by a lifetime term of supervised release. Two years later, Mr. Boam's trial counsel, Robin Dunn, was indicted on federal drug trafficking charges. Mr. Dunn eventually pled guilty to Conspiracy to Distribute Fentanyl and Methamphetamine. Mr. Boam now argues that he received ineffective assistance of counsel.

Mr. Boam's charges stemmed from nude videos of his 14-year-old stepdaughter T.A., secretly filmed while T.A. showered behind a transparent curtain. Mr. Boam placed a hidden camera, disguised as a cell phone charger, in the master bathroom of his house, and he encouraged T.A. to shower there rather than the other bathroom. A total of thirty-six videos showing T.A. completely nude were saved to Mr. Boam's iCloud account.

T.A.'s mother found the videos in September 2019 and contacted law enforcement. Officer Dustin Johnson, from the Jefferson County Sheriff's Office, conducted a series of forensic interviews with T.A. At the initial interview, before being told of the videos, T.A. did not describe any incidents of sexual abuse. At the second interview, after being shown images from the videos, T.A. stated that Mr. Boam had given her Ambien then sexually assaulted her at a hotel room in Idaho Falls following a family outing. She also told investigators of another incident where Mr. Boam gave her Ambien, and she woke up with him on top of her.

Mr. Boam was initially charged in state court with Video Voyeurism and

Lewd Conduct with a Minor Under Sixteen. At that point, he was represented by Penelope North-Shaul. In January 2020, he pled guilty to the Lewd Conduct count pursuant to a binding plea agreement that imposed a prison term of twenty years, with five years fixed. The plea agreement also provided that the United States Attorney would not pursue federal charges. Several months later, Mr. Boam fired Ms. North-Shaul, retained Kristopher Meek and Dan Dummer, and withdrew his guilty plea. In August 2020, the Government commenced the federal prosecution underlying the present case. After the federal indictment, Mr. Boam fired Mr. Meek and Mr. Dummer. He retained Mr. Dunn. Co-counsel Manuel Murdoch was subsequently appointed by the Court as stand-by counsel to assist Mr. Dunn after Mr. Dunn developed COVID-related medical issues. Mr. Murdoch continued in this role and sat through the trial. However, it appeared that he was playing almost no role in representing Mr. Boam during the trial.

On Mr. Dunn's advice, Mr. Boam subsequently rejected at least one plea offer in the federal case. Mr. Boam's briefing here is not a model of clarity, but he focuses on a plea offer made on the first day trial. Mr. Dunn apparently counseled Mr. Boam to refuse the offer because he "couldn't lose" the case, and the jury was certain to acquit. *See* Dkt. 14 at 12-13. Mr. Dunn also failed to discuss the Sentencing Guidelines with Mr. Boam—though co-counsel did so, and the Government included a cover letter explaining Mr. Boam's sentencing exposure.

MEMORANDUM DECISION AND ORDER - 3

Trial commenced in September 2021. Mr. Dunn was not well prepared, to say the least. In the run-up, he missed several important deadlines, including for disclosing many expert witnesses and filing exhibit lists. Mr. Dunn did timely disclose his intent to call expert Carrie Wright, Mr. Boam's counselor, but he failed to timely disclose her opinions about the forensic interview techniques that investigators used with T.A.[1] Due to these delays, the Court excluded Mr. Boam's proposed experts and prohibited him from using exhibits not already known to the Government. Mr. Dunn also failed to pursue a motion to admit polygraph evidence after his initial motion was denied without prejudice. Ultimately, Mr. Dunn put on almost no affirmative evidence.

The Government's case relied largely on the videos themselves, but also on T.A.'s testimony about the sexual assaults, which were admitted as 404(b) evidence. In addition to the hotel sexual assault that she had disclosed to investigators, T.A. testified that Mr. Boam vaginally raped her once while she was on Ambien. She explained that the memories of both assaults returned only later, as flashbacks, after she watched some of the shower videos. Mr. Dunn did not attempt to call any expert witnesses who could testify about the unreliability of

---

[1] Ms. Wright also intended to offer expert testimony about other matters, including Mr. Boam's "specific intent and general knowledge," but these were excluded on other grounds. *See* Transcript at 579:19-80:5, *United States v. Boam*, 4:20-cr-00338, Dkt. 173 at 16-17.

**MEMORANDUM DECISION AND ORDER - 4**

recovered memories. Likewise, he failed to conduct any cross-examination about the propriety of showing T.A. the videos and potential effects it could have on her memory. He also did not seek to impeach what Mr. Boam now describes as "inconsistencies" in T.A.'s testimony.

The jury convicted Mr. Boam on all counts. The Court held a sentencing hearing on December 14, 2021, where Mr. Dunn continued his troubling performance. He failed to either read the Pre-Sentence Investigation Report to Mr. Boam or provide him with a copy ahead of the hearing. The Court provided a 30-minute recess for Mr. Boam to review the Report, and indicated a willingness to continue the hearing. After the 30-minute recess, Mr. Dunn advised the Court that he would prefer a continuance but was prepared to proceed if necessary. After an objection by the Government, the Court denied the request for a continuance and proceeded with the sentencing hearing. Mr. Boam received a sentence of 30 years on each of the Attempted Sexual Exploitation counts, to be served concurrently, and 15 years on the Possession of Child Pornography count, to be served consecutively. His total sentence was 45 years, meaning that he will be released when he is approximately 84 years old.

About two years after Mr. Boam's trial, in September 2023, Mr. Dunn was indicted on federal drug trafficking charges based on conduct that occurred between roughly June 2022 and February 2023. *See United States v. Dunn*, 4:23-

cr-00249-BLW (D. Idaho). Mr. Dunn eventually pled guilty to Conspiracy to Distribute Fentanyl and Methamphetamine. He received a sentence of 42 months imprisonment and three years of supervised release.

Mr. Boam filed the present Motion to Vacate, Set Aside, or Correct Sentence in July 2024. He asks the Court to vacate the judgment against him because Mr. Dunn provided ineffective assistance under the Sixth Amendment. Before the Government could respond, Mr. Boam sought leave to submit an amended motion, which he filed in March 2025. After further briefing delays, the motion ripened in November 2025.

## LEGAL STANDARD

A federal prisoner may challenge his sentence on the grounds that it "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). When bringing this motion, the prisoner "must make specific factual allegations which, if true, would entitle him to relief on his claim." *United States v. Keller*, 902 F.2d 1391, 1395 (9th Cir.1990). If he meets this burden, the district court must grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* § 2255(b); *see Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982) ("[A] hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims."). Conclusory statements,

without more, are insufficient to require a hearing. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).

## ANALYSIS

Mr. Boam seeks to vacate his conviction and sentence on the grounds that he received ineffective assistance of counsel in violation of the Sixth Amendment. To succeed on an ineffective assistance claim, a person must show that (1) counsel's performance fell short of an objective standard of reasonableness; and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

On the performance prong, the petitioner faces a high bar, and the court must apply "a heavy measure of deference to counsel's judgments." *Id.* at 691. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. On the prejudice prong, the petitioner must show that the outcome of the proceedings would likely have been different had he received effective assistance. *Id.* at 694.

Preliminarily, the Court notes that several of Mr. Boam's claims have nothing to do with his attorney's performance. For example, he complains that he received a de facto life sentence, which was substantively undeserved and at variance with the Court's stated intent. Dkt. 14 at 6-8. This might have been a basis

MEMORANDUM DECISION AND ORDER - 7

for appealing the sentence, but it has nothing to do with the alleged violation of his Sixth Amendment rights. Consequently, the Court will ignore these portions of Mr. Boam's argument. With that in mind, the ineffective assistance claim broadly breaks down into three categories: plea negotiations, trial conduct, and sentencing. Accepting Mr. Boam's factual allegations as true, the Court has broad concerns about Mr. Dunn's performance, but prejudice potentially resulted only from his representation during plea negotiations and from three key errors during trial.

### A. Plea Negotiations

The right to effective counsel extends to plea negotiations. *Missouri v. Frye*, 566 U.S. 134, 144 (2012). As with trial performance, the court must give substantial deference to counsel's decision-making. "Bargaining is, by its nature, defined to a substantial degree by personal style. The alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." *Id.* at 145. Thus, "a mere inaccurate prediction, standing alone, would not constitute ineffective assistance." *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986). At the same time, some negotiation errors are so fundamental that they violate the Sixth Amendment, such as the failure to advise a defendant of the immigration consequences of a plea. *See United States v. Rodriguez-Vega*, 797 F.3d 781, 796-88 (9th Cir. 2015).

**MEMORANDUM DECISION AND ORDER - 8**

Mr. Boam received multiple plea offers, one in the state court case and one or two in the federal case. As far as the state case, although Mr. Boam blames Mr. Dunn for his decision to withdraw his plea offer in the state case, Mr. Dunn was not counsel at that point. Any advice Mr. Dunn provided might have constituted malpractice, but it did not violate Mr. Boam's constitutional rights.

For the federal case, the Government says that it made a written plea offer in August 2021, while Mr. Boam describes a plea offer made "on the first day of trial," which was September 7, 2021. *See* Dkt. 14 at 12; Dkt. 16 at 3. The Court is unclear whether the parties refer to two different offers, or if someone has the dates wrong. For now, the Court will assume Mr. Boam's version of events and analyze the offer that he describes receiving at the start of the trial.

Based on the facts alleged by Mr. Boam, Mr. Dunn's actions regarding the plea offer constituted a "gross mischaracterization" of the case's likely outcome. *See Iaea*, 800 F.2d at 865. Mr. Dunn's alleged comments included that (1) "The court must let his evidence in at trial."; (2) "A video of a teenager in a shower was not sexually explicit."; (3) "Rapists are always on top, not on bottom."; (4) "The hotel sexual assault issue . . . could not be used by the government."; and (5) "Mr. Dunn was certain he [Boam] would be found not guilty." Dkt. 14 at 12-13. This wildly inaccurate, not to mention bizarre and unprofessional, advice falls short of an objective standard of reasonableness.

MEMORANDUM DECISION AND ORDER - 9

To demonstrate *Strickland* prejudice in the context of plea negotiations, the petitioner must show that there is a reasonable probability that he would have entered a plea agreement but for counsel's deficient advice, that the court would have accepted the plea, and that the resulting conviction or sentence would have been less severe. *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). The Government argues that no prejudice resulted because Mr. Boam received proper advice from co-counsel Mr. Murdoch, who submitted a declaration stating that he spoke with Mr. Boam about the August 2021 plea offer. *See Affidavit of Manuel Murdoch*, Dkt. 16-4. Again, the Court is confused about whether the parties are even discussing the same plea offer. In addition, given Mr. Murdoch's role as stand-by counsel, it is unclear what influence he would have had with Mr. Boam, particularly when Mr. Murdoch's views conflicted with the advice given by Mr. Dunn. But regardless, the prejudice analysis presents a factual dispute that must be resolved through an evidentiary hearing.

B.  **Trial Conduct**

Mr. Boam raises numerous problems with Mr. Dunn's conduct at trial: (1) possible drug impairment; (2) failure to timely disclose witnesses, experts, and exhibits; (3) failure to retain appropriate experts; (4) failure to resubmit for polygraph admission; (5) lack of logical trial strategy; (6) ineffective cross-examinations of T.A. and Officer Johnson; (7) calling irrelevant and unqualified

witnesses; (8) failing to object to T.A.'s lay testimony about Ambien and memory loss; and (9) a bizarre closing argument. The Court agrees that Mr. Dunn's conduct throughout the trial was troubling. But prejudice plausibly resulted only from the failure to timely disclose the opinions of expert Carrie Wright, the failure to call an expert in recovered memories, and the ineffective cross-examinations. These errors could have significantly influenced the jury's perception of the 404(b) evidence regarding Mr. Boam's sexual assaults of T.A., which, in turn, could have impacted the outcome of the case.

Given Mr. Dunn's subsequent drug trafficking conviction, the Court cannot grant him the same presumption of competence usually afforded to attorneys. Nonetheless, Mr. Boam's broad complaints about trial strategy and closing arguments are too general and conclusory to support an ineffective assistance claim. *See Johnson*, 988 F.2d at 945. These issues also speak as much to the overwhelming evidence against Mr. Boam—and the fraught nature of a trial for child sexual abuse—as they do to Mr. Dunn's incompetence. Several other allegations are more specific—the failure to follow up on the polygraph issue, to submit timely exhibit lists, and to object to T.A.'s lay testimony about Ambien— but these were too trivial to impact the outcome of the case.

Mr. Boam does allege several serious errors: the failure to timely disclose Ms. Wright's opinions, the failure to retain an expert in recovered memories, and

ineffective cross-examinations of T.A. and Officer Dustin. As far as Ms. Wright, a missed deadline cannot possibly be a sound trial strategy. And although the failure to call an expert does not necessarily constitute ineffective assistance, *see Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999), such a decision is impossible to justify here. T.A.'s testimony about the sexual assaults was both powerful 404(b) evidence and one of the only points of vulnerability in the Government's case. Any competent attorney would have attempted to discredit the allegations by casting doubt on the interviews and the broader reliability of recovered memories. For the same reason, rigorous cross-examinations of T.A. and Officer Dustin, who conducted the forensic interviews, were vital to any sound trial strategy. This set of allegations plausibly constitutes deficient performance under *Strickland*.

    The Court is extremely skeptical that prejudice resulted from these errors. Ms. Wright would exclusively have offered testimony about whether law enforcement followed forensic interview protocols when meeting with the victim. This, along with expert testimony on recovered memories and better cross-examinations of T.A. and Officer Dustin, might have cast some doubt on the hotel sexual assault. But that was only 404(b) evidence, not the charged offense. For the most part, the evidence against Mr. Boam spoke for itself: 36 curated nude videos

of his young stepdaughter, secretly filmed while she showered.[2] Nevertheless, given the unique facts of this case, the Court will err on the side of conducting a hearing on these matters, despite its reservation about whether any prejudice resulted from Mr. Dunn's behavior. The Court cannot conclusively say that these errors had no effect on the outcome of the case, particularly given the seriousness of both Mr. Dunn's misconduct and the charges against Mr. Boam. The Court will therefore grant an evidentiary hearing on this limited set of trial conduct issues.

C. **Sentencing**

Finally, Mr. Boam seeks relief based on Mr. Dunn's conduct at sentencing. Specifically, he says that Mr. Dunn failed to discuss the Presentence Investigation Report (PSR) with him or provide him with a copy. This came up at the sentencing hearing, and the Court granted a thirty-minute recess so that Mr. Boam could read the PSR. He now claims that he did not have enough time to properly review the 83-page document or make relevant comments. He does not, however, even attempt to explain how this affected the sentence imposed by the Court. This claim fails to allege *Strickland* prejudice, so Mr. Boam is not entitled to a hearing

---

[2] Mr. Boam's own testimony was also remarkably inculpatory. For instance, on direct examination he tried to undermine the victim's account of the night of the alleged sexual assault by testifying that they had not swum in the hotel pool beforehand, as she claimed, because it was closed. *Transcript* at 715:4-10, *United States v. Boam*, 4:20-cr-00338, Dkt. 173 at 152. The prosecution subsequently impeached him with text messages he sent to the victim saying that he convinced the maintenance man to open the pool for them. *Id.* at 728:24-729:25, Dkt. 173 at 166.

regarding counsel's performance at sentencing.

## ORDER

**IT IS ORDERED that** Petitioner shall receive an evidentiary hearing on his Motion to Vacate, Set Aside, or Correct Sentence (Dkt. 1), but the hearing shall be limited to the claim of ineffective assistance regarding (1) federal plea negotiations, (2) counsel's failure to timely disclose the opinions of expert Carrie Wright, (3) counsel's failure to call an expert in recovered memories, and (4) the cross-examinations of T.A. and Officer Dustin Johnson.  A hearing date shall be set in a subsequent Order.



DATED: March 4, 2026

_____
B. Lynn Winmill
U.S. District Court Judge